1
2
3
4

**ROLANDO ROBLES** (Pro Se)
rolandoroblesprose@gmail.com
28 Lawrence Street
Harford CT, 016016
Telephone: (860) 960-4442

5    STATE OF CONNECTICUT

6    NEW BRITAIN SUPERIOR COURT

7

8

9    ROLANDO ROBLES, an individual, on        )    Case No.: HHB-CV17- 5018445-S
     behalf of himself, the general public and  )
10   those similarly situated                   )
                        Plaintiff,              )
11                                              )    **REVISED COMPLAINT**
                                               )
12   vs.                                        )
                                               )    Date:  December 20, 2017
13   UNITED STATES ATTORNEY FOR THE            )    Time: 9:30 a.m.
     DISTRICT OF CONNECTICUT, et al,           )    Civil Division
14                   Defendant                      Honorable Judge Robert Young
                                                    Honorable Judge Cynthia Swienton

15

16                        ***TABLE OF CONTENTS***

17

18   I.  INTRODUCTION……………………………………………...…………………3-3

19   1. SUBJECT MATTER JURISDICTION JURISDICTION……………………........................4-4

20   2. VENUE……………………………………………………………………........4-4

21   3. JURYTRIAL DEMAND………………………………………………………4-4

22   II.  PARTIES……………………………………………………………………**5**-14

23          4.  Federal Defendants……………………………………………**5**-6

24          5.  State Defendants'……………………………………………6-13

25          6.  Doe Defendants……………………………………………13-14

26          7.  Principle-Agent Concealment Conspiracy...……………………14-17

27

28   **Robles v. U.S Attorney, et al**                **Revised Class Action Complaint**

*III. CLASS ACTION ALLEGATIONS*…………………………………..............18-23

*IV*. STATEMENT OF FACTUAL ALLEGATIONS………………………………....24-105

       *8.   Plaintiffs Has A Record Of Disability*…………………………………..24-25

       *9.   Plaintiffs' Relocation To Connecticut*……………………………...............26-26

     *10.  Plaintiffs' Relationship With His Wife*………………………………...............26-28

*V.  FACTUAL AND LEGAL BASIS OF NONEXISTENT CONVICTION*…………….……....28-30

     *11.  The Recommendation Of Kidnapping*………………………....……………30-35

     *12.   Sate Defendants' First ex Parte Quasi-Judicial Criminal  Proceeding*……….35-35

     *13.   Standard, Rules, Practice, and Procedure of Criminal Proceeding*……………35-36

     *14.  State Defendants' Informal Quasi-Judicial Criminal Proceeding*………………36-38

*VI. EXPERT EVALUATION OF PLAINTIFF COMPETENCY TO STAND TRIAL*…........................38-40

     *15.  Transfer To Valley Hospital' Whiting Forensic Division*…...............................40-40

     *16.  Transfer And Placement In The Department* Correction…………….....................40-43

*VII.    ILLEGAL DISPOSITION MADE OR IMPOSED IN AN ILLEGAL MANNER*…...................43-46

     *17.  Plaintiffs' Classification as a Low Risk Sex Offender*………...……………46-47

*VIII.    SENTENCE WAS MADE OR IMPOSED IN AN ILLEGAL MANNER*……………….............47-51

     *18.  Court Ordered Special Conditions of Probation*………………………….......51-52

*IX.    QUANTUM  LEAPS OF CUSTODY*……………………………………........52-105

     *19.  Reclassification Of Risk Level*………………………………………….52-56

     *20. State Defendants' Ex Parte Quasi-Judicial Probation Proceeding*……………….56-56

     *21. Formal Procedure And Practice For Violation Of Probation*……………………56-57

*X.  FIRST INFORMAL QUASI-JUDICIAL VIOLATION OF PROBATION PROCEEDING*...........57-59

     *22.  Plaintiff Second Released From Prison To Probation*…………………...……...59-62

     *23.  State Defendants' Second ex Parte Quasi-Judicial Probation Proceeding*……...61-62

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

*XI. SECOND INFORMAL QUASI-JUDICIAL VIOLATION OF PROBATION PROCEEDING* ......62-64

24. *Notice Of The Courts Holding in Salamon* ……………………………………..…..64-65

25. *Pro Se Attempt to Access The Courts Based On Clams Herein* …………….…….65-71

26.. *Plaintiff Release From Prison After Notice Of The Salamon Decision* ……..…....71-76

*XII.    CONSPIRACY TO DETAINEE AND FRUSTRATE ACCESS TO COURTS* ........................76-78

27. *State Defendants' Third ex Parte Quasi-Judicial Proceeding* ……………………..79-79

28. *Pro Se Challenge To The Trial Courts Subject Matter Jurisdiction* ………..……..79-89

*XIII.    CONSPIRACY TO OBSTRUCT REVIEW OF PLAINTIFF CLAIM ON APPEAL* ….…........90-91

*.  Affidavit of Rolando Robles* …………………………………………………..91-91

*XIV.    COUNTS ONE THROUGH SIX* ……… ……………………………………..……………...…92-106

* *Demand for relief* ……………………………………………………….…....…......105-106

*XV.    STATEMENTS RE: AMOUNT IN DEMAND* ……………………………………….....106-106

## I.    INTRODUCTION

The Plaintiff, Rolando Robles, Pro Se, and others similarly situated bring this civil action for violations of their rights secured and protected by *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971); 18 U.S.C §1964., 29 U.S.C. § 794., 42 U.S.C. § 1983., and 42 U.S.C. § 12101; Article first § 10, the 1st, 5th, 8th , 9th , 10th , and 14th  Amendments to the United States Constitution, Articles First §§ 2, 5, 7, 8, 9, 10, 12, 13, 14, 19, 20, and Article Fifth § 1 of the Connecticut Constitution, and under the laws of the State of Connecticut, for which they seek termination of employment, punitive damages, declaratory, and  injunctive relief, and attorney's fees and cost.

**Robles v. U.S Attorney, et al**                                          **Revised Class Action Complaint**

*1. SUBJECT MATTER JURISDICTION*

**1.**     Jurisdiction is premised on respondent superior, state, and federal common-law in that this Court shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States and the State of Connecticut.

**2.**     This Court shall have jurisdiction over plaintiffs federal claims under 42 U.S.C. § 1983, 28 U.S.C. § 1367, 28 U.S.C. § 1331, and 5 U.S.C. § 702

**3.**     The ADA applies to State Defendants offices because they are a "public entity" as defined by title II.  42 U.S.C. § 12131(1).

**4.**     State Defendants offices receive financial assistance from the Department of Justice as such this court has authority under section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, and the Department's implementing regulation, 28 C.F.R. Part 42, Subpart G.

**5.**     This Court shall have jurisdiction to issue a declaratory judgment under C.P.B §17-56, C.G.S§ 4-175, C.G.S§ § 52-29, and 28 U.S.C. § 2201.

*2. VENUE*

**6.**     Venue in this Court is proper under the foregoing Connecticut General Statues and 28 U.S.C. § 1391(b) in that is Judicial District is where any Defendant resides or may be found.

*3. JURY DEMAND*

**7.**     Under the Seventh Amendment to the United States Constitution; Article First § 19 of the Connecticut Constitution. Plaintiff requests a jury trial on all issues and Claims in this Revised Class Action Complaint as the plaintiff has exhausted his administrative and judicial remedies.

Robles v. U.S Attorney, et al                                              **Revised Class Action Complaint**

*II. PARTIES*

**8.**    Plaintiff, **ROLANDO ROBLES**, is and was at all time's material to this revised class action complaint a Hispanic citizen and resident of the State of Connecticut, and the United States of America. Plaintiff was imprisoned in the Department of Correction, he was released on May 5, 2017, his inmate number was #336783.

**9.**    Plaintiff, **ROLANDO ROBLES**, is and was at all time's relevant hereto a pretrial detainee appearing by way of special appearance challenging state defendants incompetent exercise of personnel jurisdiction over him, defendants subject matter jurisdiction over the case, and defendants decision in placement of the case, once he regained his competency.

*4. Federal Defendants*

**10.**    Defendant, **UNITED STATES**, is and was at all times herein the head political division of **CONNECTICUT**, incorporated and existing under the laws of the Union of the United States of America by acts of Congress. Defendant, **UNITED STATES**, was and is the employer of federal Defendants and is responsible for training and supervision of their offices.

**11.**    Defendant**, UNITED STATES**, is and was at all times herein the principal of federal Defendant, Ndidi N. Moses, and is responsible for and assumes risks incidental to polices, practices, mutual indifferences, customs, and usage of this Defendants federal office. Defendant, **UNITED STATES**, is liable by its' own neglect and indifference in not properly superintending the discharge" of subordinates' duties and policies within Ndidi N. Moses federal offices.

**12.**    Defendant, **Ndidi N. Moses**, during all times herein was, the duly elected, employed, and acting Assistant United States Attorney for the Connecticut Federal District Court and/ or the

Robles v. U.S Attorney, et al                                                    **Revised Class Action Complaint**

5

Hartford Federal District Court, she a final policymaker in federal civil law enforcement, investigatory, managerial, administrative, and supervisory duties of subordinates within her office. In allowing, the things alleged by plaintiff, this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other state defendants' offices under color of state law. Defendant, Ndidi N. Moses, acted with ill will and mutual, deliberate in difference in the discharge of her duties, within and outside the scope of her employment in excess of her jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendant, **Ndidi N. Moses** is sued in her official capacity.

*5. State Defendants*

13.    Defendant**, CONNECTICUT**, is and was at all times herein the 5th state to the **UNITED STATES,** and a political subdivision of the United States, incorporated and existing under the laws of the Union of the United States by acts of congress and the laws of the Connecticut general assembly. Defendant, **CONNECTICUT**, was and is the employer of state Defendants below and is responsible for training, and supervision of their offices.

14.    Defendant, **CONNECTICUT**, is and was at all times herein, receiving federal aid from the federal Department of justice. **CONNECTICUT** provides state  defendants offices federal aid to support a range of deficiencies in law enforcement, prosecution and court programs, prevention programs, community corrections, drug treatment and enforcement, crime victim initiatives, and planning, evaluation, and technology improvement programs to advance rehabilitation and access to courts.

15.    Defendant, **CONNECTICUT**, is and was at all times herein the principal of State Defendants offices and is responsible for and assumes risks incidental to polices, practices, mutual

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

6

indifferences, customs, and usage of the state Defendants offices. Defendant, **CONNECTICUT**, is liable by its' own neglect and indifference in not properly superintending the discharge" of subordinates' duties and policies within state defendants offices.

16.    Defendant, **CITY OF HARFORD** and/ or **COUNTY OF HARFORD**, is and was at all times herein a municipal corporation, and a political subdivision of the United States, and the State of Connecticut, incorporated and existing under the laws of the United States of America and the State of Connecticut.

17.    Defendant, **CITY OF HARFORD** and/ or **COUNTY OF HARFORD**, is and was at all times herein also the principal of the State Defendants offices and is also responsible for and assumes risks incidental to polices, practices, mutual indifferences, customs, and usage of state Defendants offices. Defendant, **CITY OF HARFORD** and/ or **COUNTY OF HARFORD**, is liable by its' own neglect and ineffective implementation of polices amounting to deliberate indifference on part of the City of Hartford causing state defendants office managerial behaviors herein.

18.    Defendant, **Daniel P. Malloy**, during all times herein was, the duly elected, employed, and acting Governor of the Connecticut and/ or City of Harford, and the final policymaker in legislative enforcement, investigatory, managerial, administrative, and supervisory duties of subordinates within his office. In allowing, the things alleged by plaintiff, this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other state defendants' office under color of law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his legislative, investigatory, managerial, administrative, and supervisory duties within and outside the

**Robles v. U.S Attorney, et al**                                        **Revised Class Action Complaint**

7

scope of his employment, in excess of over his jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendant, **Daniel P. Malloy** is sued in his official capacity.

19.     Defendant, **Michael Lawlor**, during all times herein was, the duly elected, employed, and acting Undersecretary For Criminal Justice Policy of Connecticut and/ or the City of Harford, and the final policymaker in legislative enforcement, managerial, administrative, investigatory, and supervisory duties of subordinates. In allowing, the things alleged by plaintiff this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other state defendants' offices under color of law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his legislative, managerial, investigatory, administrative, and supervisory duties within and outside the scope of his employment, in excess of over his jurisdiction and statutory authority over the subject matter and the person of plaintiff. Defendant, **Michael Lawlor**, is sued in his official capacity.

20.     Defendant, **Mark F. Kohler**, during all times herein was, the duly elected, employed, and acting Assistant State Attorney General of Connecticut and/ or City of Harford and the final policymaker in civil law enforcement, managerial, administrative, investigatory, and supervisory duties of subordinates. In allowing, the things alleged by plaintiff this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other state defendants' offices under color of law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his civil prosecutorial and investigatory duties within and outside scope of his employment, In excess of over jurisdiction and statutory authority over the subject matter and the person of plaintiff. Defendant, **Mark F. Kohler** is sued in his official capacity.

Robles v. U.S Attorney, et al                          **Revised Class Action Complaint**

21.     Defendant, **Patrick L. Carol**, during all times herein was, the duly elected, employed, and acting Chief Court Administrator of the Connecticut Superior Court and/ or Hartford Superior Court, and the final policymaker in administrative law enforcement, managerial, investigatory, administrative, supervisory duties of Superior Court Organization. In allowing and doing the things alleged by plaintiff, this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other the state defendants' office under color of law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his managerial, investigatory, administrative, and supervisory duties of Superior Court Organization within and outside the scope of his employment, in excess of over his jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendant, **Patrick L. Carol** is sued in his individual and/ or official capacity.

22.     Defendants, **Thomas P. Miano, David Gold, Joan K. Alexander, Carl E. Taylor, Julia Dewey, J. Robina, and  Sheila M. Prats,** during all times herein were, the duly elected, employed, and acting Judges of the Connecticut Superior Court and/ or Hartford Superior Court, and the final policymakers in judicial law enforcement, managerial, administrative, investigatory, and supervisory duties. In allowing and doing, the things alleged by plaintiff, these defendants acted as Executives, Administrators, Agents, and servants of the other state defendants' offices under color of law. These defendants acted corruptly with ill will and mutual, deliberate indifference in the discharge of their judicial duties, managerial, administrative, investigatory, and supervisory duties within and outside the scope of their employment, in clear absence of their jurisdiction or in excess of over their jurisdiction, and statutory authority over the subject matter, the person of plaintiff, and the

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

9

claims herein. Defendants, **Thomas P. Miano, David Gold, Joan K. Alexander, Carl E. Taylor, Julia Dewey, J. Robina, and  Sheila M. Prats** are sued in their individual and/ or official capacity.

23.    Defendants, **Detective P.J. Clark and Detective Camp**, during all times herein were the duly elected, employed, and acting police officers of the Hartford Police Department and/ or Connecticut Police Department. In doing the things alleged by plaintiff, these defendants acted with ill will and mutual, deliberate indifference in the discharge of their investigatory, managerial, administrative, duties within and outside the scope of their employment in clear absence of their jurisdiction or in excess of over their jurisdiction and statutory authority over the subject matter and the person of plaintiff. **Detective P.J. Clark and Detective Camp,** are sued in their individual and/ or official capacity.

24.    Defendants, **Kevin T. Kane**, during all times herein was, the duly elected, employed, and acting Chief Prosecutor of the Connecticut Superior Court and/ or Harford Superior Court, and the final policymaker in court advocacy duties, managerial, administrative, investigatory, supervisory duties of subordinates. In allowing, the things alleged by plaintiff, this defendant acted as an Executive, an Administrator, an Agent, and a servant of the other state defendants' offices under color law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his court advocacy duties, managerial, administrative, and supervisory duties within and outside the scope of his employment in clear absence of his jurisdiction or in excess of over his jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendant **Kevin T. Kane** is sued in his official capacity.

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

**25.**    Defendants, **David Zajaja, Gail P. Hardy, and Frank Palocey**, during all times herein was, the duly elected, employed, and acting prosecutors of the Connecticut Superior Court and/ or Hartford Superior Court. In doing, the things alleged by plaintiff, these defendants acted as Executives, Administrators, Agents, and servants of the other state defendants' offices under color of law. These defendants acted with ill will and mutual, deliberate indifference in the discharge of their Court advocacy duties, investigatory, managerial, administrative, and contractual duties within and outside the scope of their employment in clear absence of their jurisdiction or in excess of over their jurisdiction and statutory authority over the subject matter the person of plaintiff and the claims herein. Defendants, **David Zajaja, Gail P. Hardy, and Frank Palocey** are sued in their individual and/ or official capacity.

**26.**    Defendants, **Susan Storey, and Brain Carlow**, during all times herein were, the duly elected, qualified, and acting Chief/ Deputy Public Defenders of the Connecticut Superior Court and / Harford Superior Court and the final policy makers in Court advocacy duties, managerial, investigative, administrative, supervisory duties of subordinates. In allowing, the things alleged by plaintiff, these defendants acted as Executives, Administrators, Agents, and servants of the other defendants' offices under color law. These defendants acted with ill will and mutual, deliberate indifference in the discharge of their Court advocacy duties, managerial, administrative, and supervisory duties within and outside the scope of their employment in clear absence of their jurisdiction or in excess of their jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendants, **Susan Storey, and Brain Carlow** are sued in their official capacities.

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

27.    Defendants, **Bruce Lorenzen, Robert Meredith, and Stephen F. Cashman**, during all times herein were the duly elected, employed, and acting Defense attorneys for the Connecticut Superior Court and / or Harford Superior Court. In doing the things alleged by plaintiff, defendants acted as Executives, Administrators, Agents, and servants of the other state defendant's offices under color of law. Defendants acted with ill will and mutual, deliberate in difference in the discharge of their Court advocacy duties, investigatory, managerial, administrative, and breaching contractual duties within and outside the scope of their employment in clear absence of their jurisdiction or in excess their jurisdiction, and statutory authority over the subject matter, the person of plaintiff, and the claims herein. Defendants, **Bruce Lorenzen, Robert Meredith, and Stephen F. Cashman** are sued in their individual and/ or official capacity.

28.    Defendant, **Kevin Lawrence**, during all times presumed was, the duly elected, employed, and acting Chief Probation Officer of the Connecticut Adult Probation and/ or Hartford Adult Probation and the final policymaker in administrative law enforcement, investigatory, managerial, administrative, supervisory duties of subordinates. In allowing, the things alleged by plaintiff, this defendant acted as Executives, Administrators, Agents, and servants of the other state defendants' offices under color of law. This defendant acted with ill will and mutual, deliberate indifference in the discharge of his investigatory, managerial, administrative, and supervisory duties within and outside the scope of his employment in clear absence of his jurisdiction or in excess of over his jurisdiction, and statutory authority over the subject matter and the person of plaintiff. Defendant, **Kevin Lawrence** is sued in his individual and/ or official capacity.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

29.      Defendants**, Petter Guysler, Jeff Coffey, Tom Narcwitiz, and Brandon Doolittle**, during all times herein were, duly appointed, employed, and acting Probation Officers of the Connecticut office of Adult Probation and/ or Hartford office of Adult Probation. In doing, the things alleged by plaintiff, these defendants acted as Executives, Administrators, Agents, and servants of the other state defendants' offices under color of law. These defendants acted with ill will and mutual, deliberate indifference in the discharge of their investigatory, managerial, administrative, contractual, and supervisory duties within and outside the scope of their employment in clear absence of their jurisdiction or in excess of over their jurisdiction, and statutory authority over the subject matter, the person of plaintiff and the claims herein. Defendants, **Petter Guysler, Jeff Coffey, Tom Narcwitiz, and Brandon Doolittle** are sued in their individual and/ or official capacity.

### 6. Doe Defendants

30.      Plaintiffs are ignorant of the true names and/or capacities of defendants sued as **DOES 1 through 25**, inclusive, and therefore referee to defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained upon discovery. The DOE defendants include individuals who supervised and/or participated in the conduct complained of herein. Plaintiff is informed and believes; therefore alleges that each of the DOE defendants is legally responsible and liable for these incidents, injuries and damages set forth. Each defendant proximately caused said incidents, injuries and damages by their recklessness, breach of duty, reckless supervision, investigations, management or control, and violation of constitutional and statutory legal rights, or other personal, vicarious or imputed recklessness, fault, or breach of duty, or

Robles v. U.S Attorney, et al                                     **Revised Class Action Complaint**

unreasonableness, whether severally or jointly or whether based upon agency, employment, or control or upon any other act or omission.

31.     In doing the acts these defendants acted unreasonably and in bad faith within and outside the course and scope of their employment. In doing the acts and/or omissions alleged, defendants acted under color of authority and/or under color of state and federal law. In doing, the acts and/or omissions, herein. Defendants, acted as the agent, servant, and employee and/or in concert with each of said other defendants.

32.     Whenever reference is made in herein to any act of defendants, that allegation shall mean that each defendant acted individually or jointly with the other defendants named herein. As presumed herein, each defendant acted as the principle, agent, executive, administrator, or representative of each of the other defendants, and in doing the acts herein alleged, each defendant acted within and outside the scope of their employment with each of the other defendants, and with permission and ratification of each of the other defendants.

### 7. Principle-Agent Concealment Conspiracy

33.     State and federal defendants have controlled, directed, formulated, known and/ or approved of, and/ or agreed to various acts and practices of each defendants. Whenever reference is made herein to any act of any defendant or defendants, the allegation shall mean that the defendant acted in bad faith, was unreasonable, or defendants did the alleged herein either personally or through the defendant's or acted as defendants' principle, agent, executive administrator, or representative acting within and outside actual or ostensible scope of their authority.

Robles v. U.S Attorney, et al                          **Revised Class Action Complaint**

**34.**     Herein, each state defendant knew that the other defendant were engaging in or planned to engage in violating the law. Knowing that the other defendants were engaging in such unlawful conduct, each defendant nevertheless facilitated the commission of those unlawful acts. Each defendant intended to and encouraged , facilitated, or assisted in the commission of the unlawful acts alleged , and aided and abetted the other defendants in unlawful conduct

**35.**     Each state and federal defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the alleged acts herein. And some or all of the defendants acted as agents of the other defendants, and all of the defendants acted within and outside the scope of their agency if acting as agent of another.

**36.**     State Defendants, individually and through their agents, representatives and/or employees, concealed or suppressed material fact and law; about the incidents made the subject of this lawsuit in that they concealed or suppressed such material facts and law when they knew or reasonably should have known of the illegality of such concealment or suppression of material facts and law.

**37.**     State Defendants made such concealments or suppressions with ill will, mutual deliberate indifference, recklessly, willfully, or wantonly despite the foreseeable misconduct and injury of these concealments or suppressions. The below concealments or suppressions were made without plaintiffs knowledge; Plaintiff justifiably relied on state defendants' concealments or suppressions; and state defendants' concealments were the proximate cause of plaintiff's damages.

**38.**     State Defendant named participated in the concealments and omissions complained of and then entered into a civil conspiracy to conceal the truth about these issues, improprieties, and

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

illegal activities of their behavior. Each state and federal defendant participated in or helped to conceal or suppress the improper and illegal activities taking place within their offices, before the Court, and specifically within their investigatory, administrative and managerial departments.

39.    State and federal Defendants entered into a civil conspiracy and a concert of action to pursue a common design, purpose, and intention. Each along with one or more additional persons or entities had a meeting of minds about a common object or accomplished goal or a common course of action. That goal or the course of action used to obtain the goal is unlawful; at least one party to the conspiracy committed an overt unlawful acts or a course of conduct to further the conspiracy; and plaintiff's damages were the proximate result of this conspiracy.

40.    Federal officials have acted under color of state law because there is evidence they have played a significant role in the state defendant's behaviors or have acted in concert or engaged in a conspiracy or "symbiotic" venture to violate the plaintiffs' classes' rights under the Constitution or federal law. Plaintiff has challenged the constitutionality of the kidnapping statute, State defendants personal' jurisdiction over him and their subject matter jurisdiction but that state Defendants have obstructed plaintiff legitimate efforts to seek judicial redress on these challenges for no rational legitimate state interest.

41.    State and Federal Defendants stand to profit from such ill will and mutual deliberate indifference in the allocation of funding so as to insinuate themselves into a position of interdependence with each other they are in effect joint participants in the challenged activity. State defendants' decisions and behavior herein shocks the conscience because after plaintiff challenged their behavior hey did the acts herein intentionally in retaliation.

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

**42.**     The defense of governmental immunity from liability for torts committed in preforming governmental functions is inapplicable to this case. State and federal laws provides that no immunity exist for the behavior described below. The doctrine of governmental immunity from liability for torts committed in performing governmental functions is inapplicable to this case. The injury suffered by the plaintiffs and the class was incurred in performing a proprietary function so the doctrine of respondeat superior applies, and defendants are held liable for discrimination, ill will, and mutual deliberate indifference, recklessness, willful, or wanton misconduct based on the factual basis herein

**43.**     State Defendants were negligent and/ or reckless in performing ministerial acts; they were negligent and/or reckless in failing to supervise, train, and otherwise investigate the issues herein and/ or intentionally violated the law or are just plainly incompetent. A reasonable person would have known or knew state defendant's decisions and conduct violated clearly established statutory or constitutional rights. State and federal Defendants had the, sue sponte, pro forma, authority to address the alleged issues herein and take corrective measures; State defendants had actual notice of, and acted with ill will, and deliberately indifferent to the misconduct. State defendants concealed material facts, breached contracts, and were not acting as advocates of the court on the claims herein.

**44.**     State Defendants did not use discretion on whether to initiate proceedings as described below. Defendants' unconstitutional acts were parts of a continuing, cumulative, violation amounting to a series of wrongs occurring within and outside the limitation period. The statute of limitations is further tolled or extended because the plaintiff and class were under marked distress, intellectual impairment and mental disability, and could not articulate the claims in the way a lawyer would

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

17

within the limitation period to file the present action. The moving force behind plaintiff's over-detention was the collapse of the Defendants individual and collective offices investigatory, administrative, and management systems, and defendants' overall ill will and mutual, deliberate indifference to such overall collapse.

## III. CLASS ACTION ALLEGATIONS

**45.**    The "Pretrial Plaintiff Class" bring this class action under C.P.B §§ 9-7 and 9-8; Fed. R. Civ. P. 21 23(b) (2) or Fed. R. Civ. P. 23(b) (1), on their own behalf and on behalf of all other persons being subjected to:

1. **Denial of Evidentiary Hearings Under Franks**. State Defendants deny the pretrial plaintiff and the class challenges to warrants seizing their person, papers or effects and the case otherwise outlined against them. State Defendants prevent claims under *Franks v. Delaware*, 438 U.S. 154, 155-156 (1978) to test deficiencies in warrants. State Defendants unlawfully bind cases over for trials under C.P.B § 37-12 to later meet the criteria for federal aid agreements. State Defendants fraudulently obtain the pretrial plaintiff classes' consent to wavier frank claims to obtain more federal aid money to misappropriate it;

2. **Excessive Bonds**. State Defendant's collude to deprive detainees of their constitutional rights by setting excessive bails for detainees based on the detainees' race and these excessive bails cause indigent, uneducated detainees to plead guilty to secure their release. State defendant's consideration of bond in application to individual cases is not based on established criteria but is disproportionate to the offense or inconsistent with evolving

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

18

standards of decency. The pretrial plaintiff class is and was held on excessive bail with no expectation of securing valid dispositions by the state defendants;

3. **Unconstitutional Denials of Access to Courts On Cognizable Claims**. State Defendants mischaracterize procedure and cognizable claims to avoid addressing the merits in written options or through declaratory judgment in violation of *Lewis v. Casey,* 518 U.S. 343 (1996); *Bounds v. Smith*, 430 U.S. 817 (1977), their oaths, and obligations under the supremacy clause. State Defendants fraudulently obtain the pretrial plaintiff classes' consent to waive claims. State Defendants deny filing appropriate motions in their pending criminal cases. State defendants deny filing appeals and written decision of cognizable claims to frustrate further litigation. The pretrial plaintiff class is not provided effective assistance of counsel, and/ or fair standing in litigation based on their claims and their inability to articulate claims due to mental impairment as shown herein.

4. **Unconstitutional Utilization of The Alford Doctrine**. State Defendants' fraudulently use the Alford doctrine to obtain personal jurisdiction and subject matter jurisdiction over the pretrial plaintiff and class and their cases. State Defendants do not inform pretrial plaintiffs of the nature of the charge against him with sufficient precision to enable them to prepare their defense and to avoid prejudicial surprise, and . . . to enable them to plead his acquittal or conviction in bar of any future prosecution for the same offense. State Defendants take advantage of the mentally slow and impaired. State Defendants induce guilty pleas and do not otherwise properly plea canvass the mentally impaired. State defendants form a normal

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

Attorney-Client relationship. State defendants take advantage of the mentally impaired by leading them into illegal dispositions by rubber stamping and not using discretion;

5. **Unconstitutional Denial of Reasonable Accommodations.** State Defendants act with ill will and mutual deliberate indifference and discriminate against the disabled, or a class of the disabled in favor of the able-bodied. State Defendants deny placement of the plaintiff and class in probation, promise to appears, or a mental health facilities as an accommodation to their mental disability. The pretrial plaintiff and the class is confined to mental impairment and mental disability. State defendants do not use discretion and/ or funding to address the inhabitance and exacerbation of developmental and mental impairments in quantum leaps of custody. State defendants deny adequate state and federal funding to address the issues herein. State defendants' misappropriation of funding causes illegal dispositions and the plaintiff classes' dependency on the Federal Social Security Disability Insurance (SSD or SSDI) program. State defendants breach the terms of federal and state aid agreements. State defendants unlawfully collect federal and state funding and do not apply aid in a manner consistent with the terms of those agreements. State defendants do not lower "the recidivism rate" and do not advance reformation and rehabilitation of black and Hispanic youth;

6. **Denial of Probationary Hearings**. through informal procedure, policy, and mutual understandings state Defendants without individual statutory authority or individual good cause under C.G.S. § 53a-32 fraudulently obtain consent to waive probationary hearings within a 120 days in violation of the pretrial plaintiff class right to due process of law

**Robles v. U.S Attorney, et al**                                   **Revised Class Action Complaint**

because state defendants offices are under staffed, have minimal time for legal research and the class to discuss legal claims; and a collapse in the follow up of drafting legal pleadings pursuant to those claims;

7. **Exacerbation of Mental Illness and Developmental Disability.** "The pretrial class is 18 to 25 years of age.  The pretrial classes' brains are not capable of impulse control, decision-making, and reasoning as adult brains are. The pretrial class have mental impairments and are not as morally culpable as adults are. State defendants are aware of the classes' impairments but act with ill will, deliberately indifference, and discriminate against the disabled, or a class of the disabled, in favor of the able-bodied by placing the class in adult court proceedings and the Department of Correction. Twenty-three (23) hours day mentally ill 18 to 25 year olds are confined to their cells. Most  mentally ill 18 to 25 year olds are confined to their cells or over a year or more. There is inadequate lighting, fresh air, recreational activities; under staffed mental health personnel, minimal time for mental health therapy, a collapse in follow up of mental health therapy, and no access to the internet or volunteer programs for access to educational material to advance "reformation and rehabilitation" within the Department of Correction;

46.    The over-detention Class sue under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3). On behalf of the class consisting of: (a) each person who has been, is, or who will be incarcerated in any State of Connecticut, Municipal facility in a town or subject to the jurisdiction of Connecticut in the two years preceding filing this action up to and until the date this case is terminated. And (b) who was not released or will

**Robles v. U.S Attorney, et al**                                              **Revised Class Action Complaint**

not be released by midnight on the date on which the person is entitled to be released by court order, posting bail, or the date on which the legal basis for his or her detention is said to be void or voidable.

47.    The plaintiff and over-detention class asserts their convictions or sentences heave declared invalid or called in to question by the Connecticut Supreme Court holdings in *State v. Salmon* 287 conn. 509 (2008); see *State v. Commins*, 276 Conn. 503 (2005) the pretrial plaintiff and the class assert they are being blocked by state defendants in obtaining a decision on merits of the claims herein as C.P.B. § 43-22 is unconstitutional/ as applied to the factual and legal basis herein

48.    The claims of the Plaintiff and the Class members share common issues of law. Including but not limited to whether, C.G.S. § § 53a-91;53a-91(a)(2)(A) is unconstitutionally vague and/ or over breadth as applied/ on its face/ or violates the First, Fifth, Sixth, Eighth, And Fourteenth Amendment to the Constitution of the United States; and/ or Articles first §§ 5, 7, 8, 9, 10, 12, 13, 14, 19, 20, and Article Fifth § 1 of the Constitution of  the State of Connecticut, in that: (1) the restraints imposed by the plaintiff and the class are inherent to charged or uncharged crimes; (2) the intent elements are merged making it difficult to determine when the jurisdictional line has been crossed; (3)the intent elements are over-breadth as applied to the brevity of the plaintiff and the classes intent, conduct, and circumstances; (4) there is no legal and/ or illegal drawing of conduct (5) there is no comprehensive definition of intent to prevent liberation ;(5) there nothing to restrict state defendants roles in determining whether the statutory elements have been met; and (6) the statutory defects herein causes incompetent and/ or incorrect transfers of cases, and an expansion and power of jurisdiction on an ad hoc and substantive basis through a state or local rubber-stamping policy.

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

49.     The claims of the Plaintiff and the Class members share common issues of law. Including but not limited to whether, C.G.S § 53a-30 (17) (b) (a) is unconstitutionally vague and/ or over breadth as applied to low risk sex offenders who pose no risk to the public or violates the First, Fifth, Eighth, And Fourteenth Amendment to the Constitution of the United States; and/ or  Articles first §§ 5, 7, 8, 9, 10, 12, 13, 14, 19, 20, and Article Fifth § 1 of the Constitution of  the State of Connecticut, in that: (1) the conditions imposed by probation have no nexus to the plaintiff and the classes crimes; (2) the conditions as applied by probation to the plaintiff and the class violate the A.D.A and the rehabilitation acts because they fail to accommodate plaintiff and the classes mental health treatment and supervision; (3) the conditions as applied by probation contradict the plaintiffs and the classes reformation and rehabilitation in that the conditions are designed to harasses the plaintiff and the class as it is based on personal preference, idiosyncrasies of defendants or some vague and/ or over-breadth notion that the conditions applied are good for the plaintiff and the class or society; (4) the conditions as applied by probation to the plaintiff and the class punish acts that were not punishable when they were committed and/ or imposes additional punishment for acts already committed; (5) the conditions as applied by probation cause incompetent and/ or incorrect transfers of cases, and an expansion and power of jurisdiction on an ad hoc and substantive basis.

50.     The representative Class members sue under Rules 23(a), 23(b)(2), and 23(b)(3) of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3) and assert C.P.B. § 43-22 is unconstitutional as applied in that it bars the jurisdictional  and constitutional claims herein.

**Robles v. U.S Attorney, et al**                                                **Revised Class Action Complaint**

*IV. STATEMENT OF FACTUAL BASIS*

**8. Plaintiffs Has a Record of Disability**

**51.**     The Plaintiff and the class have a developmental disability, which is a severe, chronic disability, that: (1) is attributable to a mental or physical impairment or combination of mental and physical impairments. (2) Manifested before plaintiffs and the class attained age 25. (3) is likely to continue indefinitely; (4) results in substantial functional limitations in three or more of these areas of major life activity such as: (a) Self-care. (b) Receptive and expressive language (c) Learning (d) Mobility (e) Self-direction, (f) Capacity for independent living, and (g) Economic self-sufficiency.

**52.**     Plaintiff is a Hispanic male, born in the Hartford, Connecticut on August 6, 1987, at Mt. Sinai Hospital. Plaintiff is one of five children born to his mother; he has two brothers and two sisters. Plaintiff had intermittent contact with both his parents and siblings, as there is a family history of mental illness, substance abuse, and criminal behavior.

**53.**     Plaintiff's Mother was in and out of prison for shoplifting and other criminal behavior. Plaintiff suffered physical, emotionally, and sexual abuse during the fifteen (15) years of being within and out the custody of his mother and foster homes in New York.

**54.**     Plaintiff stuttered as a child; he was in English as a Second Langue (E.S.L.) Classes, and Special Education for learning disabilities. Plaintiff had marked distress in learning, comprehending, remembering skills, taught to him by his teachers, expected of those of the same age.

**55.**     Plaintiff exhibited marked distress in the acquisition and use of verbal and nonverbal cues in interpersonal relationships. Plaintiff had marked distress in the conscious and unconscious

Robles v. U.S Attorney, et al                                     **Revised Class Action Complaint**

processes of encoding and decoding facial expressions, the tone of voice, gestures, and postures of others.

56.    Plaintiff has a delay between his emotions and his facial muscles. Plaintiff has difficulty with interpreting the body language and feelings of others or social interests of new acquaintances, causing resentment, rejection, and bulling.

57.    Plaintiff has marked distress in planning, organizing, strategizing, paying attention to and remembering details, managing time and space in his daily life. Plaintiff has marked distress with mathematics and handwriting, reading, spelling, and recalling information.

58.    Plaintiff had marked distress in controlling his behavior at school. Plaintiff was impatient, fidgeted and squirmed when seated. Plaintiff got up frequently when not allowed; walked and/ or run around the School. Plaintiff interrupted other classmates when they talked and excessively talked when asked a yes or no question.

59.    Plaintiff was very outgoing, he had friends, played basketball and ran track.  Plaintiff had a high self-esteem, but was bullied as he was passive, he got into fights but was never the aggressor; he was never suspended from school. There is no history of sexual behaviors /and or sexual contact with classmates, during plaintiff schooling.

60.    Plaintiffs marked distress caused recurring suspicious, he would read into hiding meanings of innocent remarks or casual looks of others, doubted the commitment, loyalty, and/ or trustworthiness of others, believing others were using or deceiving him. Plaintiffs marked distress caused contributed to excessive anxiety regarding separation from home or from people to whom he had established a strong emotional connection and attachment.

**Robles v. U.S Attorney, et al**                                      **Revised Class Action Complaint**

### 9. Plaintiff Relocation To Connecticut

**61.**    On or about August of 2000, at about age 15, plaintiff relocated to Connecticut as his Grandmother obtained Guardianship. Plaintiff stayed with his Mother and later with his older Sister because his grandmother was too old to care for him.

**62.**    Plaintiff had difficulty reintegrating into his schooling in Connecticut. Plaintiff did not attend Special Education because school officials held: "You don't look disabled and/ or you grew out of your learning disability." Plaintiff attended class with regular students Plaintiff did not participate in his schooling and fell behind in his schoolwork.

**63.**    Plaintiff suffered marked distress, he felt inadequate, and embarrassed compared to other classmates' abilities. Plaintiff suffered poor academic performance, and decline in performance. The school personnel and plaintiffs family were incompetent to him and his developmental needs. Plaintiff dropped out of school, as he felt alienated by family, peers, and teachers.

**64.**    Plaintiff developed asocial; introverted behaviors, he lacked the motivational skills to engage in social interactions, lacked the desire to form relationships, and preferred solitary activities. Plaintiff had no friends in Connecticut; stayed home, smoked marijuana, and played with video games. Plaintiffs marked distress manifested into major depression he felt hopelessness, a loss of interest /and or pleasure in daily activities, he had mood swings, was sad, and excessively slept.

### 10. Plaintiffs Relationship With His Wife

**65.**    On or about the year 2002 at the age 16 plaintiffs met his wife. They talked as friends, and soon fell in love with each other. They had mutual family and schooling problems. They skipped

Robles v. U.S Attorney, et al                                              **Revised Class Action Complaint**

26

school together to talk about their lives and to escape their family problems. Their relationship was unstable as plaintiffs' marked distress caused brake ups.

66.     Plaintiff always wanted to be around her; he "smothered her, and didn't give her space. Plaintiff did not cognize what he did wrong and did not feel the same as she did. Plaintiffs' marked distress caused excessive behaviors. Plaintiff would go his wife's house at night to cry and beg her to take him back, saying he would change, and give her space, for a period of days. There were never any reported domestic disputes, between them. This went on for about two years and a half.

67.     Plaintiff's sons were born in 2004 and 2005 and in the year, 2005 in April at the age 17 plaintiff was formally married. Around the time, their first son was conceived plaintiffs wife cheated on him. Plaintiff worked many jobs and had difficulties maintaining employment due to material problems, medical and mental health issues.

68.     Plaintiff was incompetent to his own mental health treatment and needs. Plaintiff had recurrent suspicious his wife was cheating on him. She would take their first son to the North End of Hartford during the wintertime at night to see her sister for no apparent reason.

69.     Plaintiff wife would not dress the child inappropriately for the weather as if she was leaving in a rush. Plaintiff believed she was taking their son to see the man whom she believed /and or wanted to be the child's father. Plaintiff was severely depressed; he did not eat, or sleep, and smoked a packet of cigarettes a day. Plaintiff would suffer marked distress and would argue with her.

70.     Plaintiff would get upset and tell her to leave their home, throwing her and their sons' cloths to the front doorstep. She would pack her things to leave but plaintiff would stop her, cry, and beg her to stay.

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

**71.**     Over time, plaintiff felt inadequate and self-alienated in the marriage. Plaintiff took ecstasy pills and smoked marijuana with Phencyclidine (PCP) to masks his distress, emotions, self-inadequacy, and alienation within the marriage.

**72.**     Plaintiff suffered hallucinations, and paranoia, he would check his wife's pants pockets, and claim to find pieces of paper with phone numbers  on them and argue with her. Plaintiff put baby power at the front doorstep to see who entering the home while he was away at work. Plaintiff would see footprints he made from coming in and then argue with his wife. Plaintiff and his wife were on the verge of divorce.

**73.**     Plaintiffs wife expressed she did not love him anymore and did not to be with him. Plaintiff suffered marked distress and threated suicide if she left him. Plaintiff and his wife stayed together but he felt inadequate and alienated in the marriage. Plaintiff knew she did not love him anymore and wanted to leave him but plaintiff did not know what to do to fixing their marriage. Plaintiff suffered, shame, insomnia, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

### *V. FACTUAL AND LEGAL BASIS OF NONEXISTENT CONVICTION*

**74.**     On or about December 15, 2005, there was a Snowstorm; this was a significant snowstorm for Connecticut. The snowstorm caused blizzard conditions and 2-5 inch snow accumulations. The strength of the storm, coupled with the extreme arctic temperatures, creating light, fluffy snow, which increased the snowfall totals.

Robles v. U.S Attorney, et al                                                        **Revised Class Action Complaint**

**75.**    The 18-year-old plaintiff reasonably believed he could fix and/ or escape his marriage by meeting and falling in love with another woman. Plaintiff reasonably believed his wife would find out; be upset and they would reconcile or that she would find out; but that he would have moved on emotionally. Plaintiff approached girls after he came out of work as they walked to school to get know them to fall love. Plaintiff greeted them, touched them inappropriately, and was rejected.

**76.**    On December 15, 2005, at 8:15 a.m. plaintiff greeted a 17-year-old girl, he touched her buttocks. She was unresponsive to his advance. Plaintiff inquired into her unresponsiveness by pulling at the wrist of her coat. She pulled away from plaintiff and her coat pulled apart at the hem of the shoulder.

**77.**    Plaintiff walked away, and headed home. Plaintiff made no threat, had no weapon, a car, rope, or pursed her after this; She was asked if she was ok by a man at the incident but ignored him, she called her mother on her cell phone but not 911, passed two Security Substations and other females as she continued to walk to school 20 minutes away. She stated the plaintiff appeared to the under the influence of drugs.

**78.**    On December 20, 2005, at 8:40 a.m. Plaintiff believed he was following his wife to stop her from cheating on him and to reconcile their marriage. Plaintiff believed his wife was walking to Hartford high School to meet the man whom he believed she was cheating on him with.

**79.**    In this incident, plaintiff hugged a 16-year-old girl and tried to kiss her on the check. She threw her head back to hit him in the face; Plaintiff lost balance and held onto her. She grabbed onto a portion of a nearby fence to balance herself from falling with the plaintiff. She shouted at the plaintiff and he let go.

**Robles v. U.S Attorney, et al**                                                    **Revised Class Action Complaint**

**80.**    Plaintiff realized it was not his wife, walked away, and headed home. Plaintiff made no threat, had no weapon, a car, rope, and tape or pursed her after. Upon information and belief, she had a cell phone but did not call 911. She passed two Security Substations and other females as she continued to walk to school 20 minutes away.  She stated plaintiff appeared to the under the influence of drugs.

**81.**    Plaintiff restraints were never completed because he didn't move anyone from one place to another or confined anyone either in the place where the restriction commences or in a place to which they been moved. Plaintiff did not have the intent of secreting or holding anyone in a place not likely to be found

**82.**    Plaintiff did he have the intent to use or threatening to use physical force or intimidation. Plaintiff did not abduct another person or restrain anyone with specific intent. It also should be noted, initial Incident reports were taken from the victims corroborating this account.

### *11. The Recommendation Of Kidnapping*

**83.**    On December 21, 2005, on or about 2:30 p.m. Plaintiffs' Son was throwing up, had diarrhea, and a fever. Plaintiff and his wife took their son to Harford Hospital for a medical Evaluation. Their son was treated, and given a prescription for medication.

**84.**    On December 22, 2005, on or about 7:30 a.m. Plaintiff left his home to walk Walgreens on Park and Washington Street to fill out his sons' prescription for medication. Plaintiff got the medication and walked home.

Robles v. U.S Attorney, et al                              **Revised Class Action Complaint**

85.     Plaintiff saw his bother at the bus stop on Park Street and Babcock; he spoke to him briefly. As they talked, Plaintiff observed they were being watch by a Hispanic girl standing across the Street, next to a Blue Dodge Neon, whom neither recognized.

86.     Plaintiff asked his brother if he knew the girl watching them. He responded in the negative. The Hispanic girl noticed them looking at her; as she talked on her phone; she jumped into the Blue Dodge Neon and pulled off in a rush. Plaintiff started too walked home; and noticed a Hispanic male was following him.

87.     Plaintiff quickened his pace and ran around the Conner of Affleck and Ward Street, entering between two buildings. Plaintiff believed he was the subject of robbery and/ or assault by this Hispanic male. Plaintiff faced the entrance and stated, "Why are you following me? The Hispanic male stated, "That's him!

88.     Detective Camp appeared from around the corner (herein Camp) and ran towards the plaintiff, stopping and kneeing him into the snow. Camp patted plaintiff down on the snow. Camp Stated "What's in the bag? Plaintiff stated "My sons' medication; what's going on?

89.     Camp took plaintiffs' sons' medication and stated "You're being detained because you fit the description of something that being going on in the area." Camp put his handcuffs on plaintiff; picked him up, moved him to the sidewalk, and turned Plaintiff sideways.

90.     Upon belief, the girl from the Blue Dodge Neon was identifying plaintiff. Camp put plaintiff in a locked police courser with two unknown police officers. The two unknown police officers drive to the Hartford Police Station.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

**91.** At the police station, the two unknown officers removed plaintiff from the courser and placed him in a locked room. One of the unknown officers removed the handcuffs from plaintiff, left, and locked the room door behind him. The room was subject to video and audio recording.

**92.** The victim lied about how she encountered the plaintiff in her statement. She was acting as an agent of the police in canvassing the area in search of a suspect. Detective P.J. Clark (herein Clark) induced her to become an agent of the police.

**93.** Clark induced her to fraud, perjury or the misrepresentation or falsification of evidence by coercion the victim to write a statement inconsistent with what she stated in the initial incident report. Clark made her concede she was the subject of a rape despite the above; and typed the statement. Clark removed the weather conditions to support his "theory of the case"

**94.** On December 22, 2005 at 8:25 am, Clark entered the room and introduced himself to the plaintiff. Clark asked several questions i.e., where plaintiff worked, what he was doing out early in the morning, where he was on certain dates, and if he recently got corn rolls. Plaintiff answered the questions saying he just took out his corn rolls, was getting medication for his sick son and that he was with his wife on the dates in question.

**95.** Clark asked for plaintiffs' wife phone number. Plaintiff provided it. Clark left the room and locked the door behind him. Clark came back in a few minutes later and confronted plaintiff with information that his wife did not corroborate the times and dates cited. Plaintiff could only say she was mistaken.

**96.** Plaintiff asked to use the bathroom. Clark used his handcuffs to escorting plaintiff to the bathroom. At the bathroom door, Clark removed his handcuffs; placed plaintiff in the bathroom,

and waited outside. When plaintiff was done, using the bathroom, Clark placed the handcuff back on and escorted plaintiff back to the room.

97.    Clark perceived plaintiff as intellectually disabled with no experience with the Criminal Justice System and took advantage of plaintiff. Clark locked plaintiff in the room and stayed outside. At 8:40am, Clark entered the room with a piece of paper, placed it on the table and said, "Sign this so we can talk.'

98.    Clark directed plaintiff, where to sign, what to sign, and initial. Clark asked plaintiff "Did you read it? Plaintiff replied, "You said it was for use to talk? Clark took the paper, and left the room. Clark never read plaintiff his rights, nor read the paper provided to him aloud. Plaintiff did not know what he signed or understand its nature or contents as applied.

99.     Clark came back in the room and interrogated plaintiff for total of Nine (9) hours. Plaintiff denied any involvement in any Criminal Activity or Behavior but that during the interrogation, plaintiff stated, "I need to talk to a counselor or something."

100.    Clark would leave and come back in room, locking the door behind him repeatedly saying, "You're only being 30%, 40%, 50% with me." This went on for hours, at one point during the interrogation an unknown Detective outside the room stated, "All you did was touch a girls' butt, just confess already; its' not a big deal! Clark exited the room. Plaintiff heard him say to her "Don't do that; I'm interrogating this guy."

101.    At 3: 00 p.m., Clark entered the room and asked plaintiff if he wanted something to eat. Plaintiff responded in the positive. Clark left the room, and a few minutes came back with Burger King and left plaintiff to eat alone. Once plaintiff finished eating, he got up and kicked the room door.

**Robles v. U.S Attorney, et al**                                              **Revised Class Action Complaint**

33

Plaintiff stated, "I want to leave." Clark entered the room and stated, "If you're not going to talk, I'm going to take you down stairs to booking."

102.    Plaintiff stated, "Well take me down stairs cause we don't have nothing to talk about." Clark left the room upset. Plaintiff kicked the door a few more times and a tall and big unknown Detective i.e., Doe 1 entered the room locking it behind him; and with as showing of authority, ordered plaintiff to "Sit down and stop kicking the door." Plaintiff stated, "I want to leave." DOE 1 stated, "You're not going anywhere, you're being held here for forty-eight hours.

103.    In Clark recommendation for arrest he stated, "He did become emotional on several occasions and during those times he would refer to his family." "That when presented with some of the facts in this investigation there didn't appear to be any reaction yet he initially denied the allegations."

104.    To get plaintiff to confess, Clark entered the room and said ".Listen, I have you're sons medication, I'll make sure he gets it, just cooperate with me." Plaintiff broke down, cried, and confessed to Clark so his son could get his medication. Plaintiff had trouble writing the statement. Clark helped the plaintiff with spelling, dates, and what to fill in as plaintiff was illiterate and incompetent in filing out such a form

105.    Plaintiff ruined statements; he had to rewrite one after another, as Clark was not satisfied with the ones produced, stating, "That's not what you told me, do another one." When Clark was satisfied, He brought plaintiff to booking. As a result plaintiff suffered, fright, anxiety, grief, bowel dysfunction, headaches, emotional disturbance, appetite loss, marked distress, pain and suffering which resulted in physical injury.

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

34

**106.**    Plaintiffs' sons' medication was delivered to his wife at their home as agreed by Clark. **See**: ***Affidavit of Ex-wife; Medical Documents,*** dated May 28, 2015. Clerk committed fraud, perjury, misrepresentation, or falsification of evidence to recommend there was probable cause to arrest plaintiff based on his theory of kidnapping.

### *12. Sate Defendants' First Ex Parte Quasi-Judicial Proceeding*

**107.**    The Judge, DOE 2, did not read Clarks recommendation for kidnapping to determine probable cause.  The Judge, DOE 2, signed on the relevant sections, and passed the recommendation for kidnapping along for processing to the Clerk, DOE 3. The Clerk, DOE 3, docketed the matter and submitted it to the arrangement court.

**108.**    The Prosecutor, DOE 4, did not read Clarks recommendation for kidnapping to determine probable cause. The Prosecutor, DOE 4, looked for the date of offence and the statue Clark recommended. The Prosecutor, DOE 4, filed Clarks recommended charging informations and submitted the matter to the arrangement court.

### *13. Standard, Rules, Practice, and Procedure of Criminal Proceedings*

**109.**    C.P.B § 42-20 provides the judicial authority shall decide all issues of law and all questions of law arising in the trial of criminal cases.

**110.**    C.G.S. § 51-164s. Provides the Superior Court shall be the sole court of original jurisdiction for all causes of action, as provided by statute.

**111.**    C.G.S. § 51-164t provides, the Superior Court shall consist of such divisions and parts thereof as shall be provided by the rules of the Superior Court to provide the highest standards of justice and the most efficient operation of the court.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**112.**    C.G.S. § 54-1g(a)  provides any arrested person who is not released sooner ... Shall be promptly presented before the superior court sitting next regularly for the geographical area where the offense is alleged to have been committed.

### *14. State Defendants Informal Quasi-Judicial Proceedings*

**113.**    Plaintiff became a defendant in <u>Connecticut v. Robles</u>, **HHD-CR05-0596704-T** and **HHD-CR06-059815-T** in G.A 14 of the Judicial District of the Hartford Superior Courts Criminal Division.

**114.**    On December 22, 2005, plaintiffs' mind and body were erroneously and forcibly was seized, handcuffed, and blackjacked in a cell beneath the court. Plaintiff was brought up to the arraignment Judge, DOE 5 and advised of his rights.. The Prosecutor, DOE 6, erroneously affirmed Clarks recommended charging informations of kidnapping. The Prosecutor, DOE 6, asserted plaintiff groped and grabbed victims on their way to school to commit sexual assaults, constituting two counts of Kidnapping. Plaintiff bond was erroneously set at $750,000.00.

**115.**    Plaintiff was determined indigent; funding was provided so a Public defender could be appointed at a later date . Per policy, a public defender, DOE 7, was standing beside plaintiff. There were no arguments on probable cause. No body met with plaintiff downstairs prior to him coming up to the arrangement to discuss Clark's recommended arrest for kidnapping.

**116.**    Plaintiff could not file an affidavit in opposition to Clark's recommendation of arrest for kidnaping because nobody-reviewed Clark's recommendation of kidnaping to determine probable cause. Everyone relied on Clark's conclusions of law what plaintiff did constituted the crime of

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

kidnapping. Everybody performed according to informal established procedures or instructions from Clark, exercising no individual judgment or discretion.

117.    Per policy a public Defender, DOE 7, entered a plea of not guilty on plaintiffs' behalf without discussion and without plaintiffs consent. The arraignment Judge, DOE 5, did not review the statutory definition of unlawful restrain and abduct to make independent Conclusions of law or review Clark's recommendation of arrest for kidnapping to determine probable cause.

118.    The arraignment Judge, DOE 5, erroneously relied on the recommended charging information's, conclusions of law of the Prosecutor, DOE 6. The arraignment Judge, DOE 5, erroneously binded, plaintiffs' mind, body, and the matter over to the incorrect part of the Criminal Division of the Superior Court. I.e. Part-A, aka High Court as a result.

119.    A Public Defender, Robert Meredith, (Herein Meredith) was assigned to the case. Plaintiff mind and body was forcibly seized, handcuffed, and blackjacked in a cell beneath the court. Plaintiff was incorrectly brought up to the Criminal Divisions Part-A Court Judge, Thomas P. Maino (herein Miano) to be tried by Court.

120.    Per policy a Mental Health Social Worker was assigned (herein Montagna) to assist Meredith in ".handling the plaintiff."  A Prosecutor, David Zajaja (herein Zajaja) was assigned to the case to prosecute in the interest of State of Connecticut and/or City of Hartford.

121.    Meredith and Montagna conducted ex parte interviews with plaintiffs about his background and the factual basis that lead to the incidents. These interviews lead Meredith to request an examination of plaintiff's competency to stand trial.

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

**122.** For six months, plaintiff did not trust Meredith due to his encounter with Clark. Plaintiff did not understand the roles of the parties, was off and on suicide watch due a tenuous adjustment to the resulting confinement. Plaintiff was on medication that stiffened his tongue causing him to slur his words when he talked to Meredith.

**123.** Plaintiff suffered marked distress and banged his head against the prison cell mirror because he could not understand Clark's recommendation for his arrest on the charge of kidnapping. Plaintiff suffered marked distress and to further calm, himself he bit the skin of his forearms, making himself bleed.

**124.** On or about April 2006, there was a hearing for adjudication of competency to stand trial. Meredith gave a brief recitation of the facts that lead him to believe plaintiff was incompetent and could not stand trial requiring an examination to determine restorability. Zajaja took no position. Miano canvassed plaintiff concluding there was a reasonable belief he was incompetent to stand trial.

### VI. EXPERT EVALUATION OF PLAINTIFFS' COMPETENCY TO STAND TRIAL

**125.** On or about May 31, 2006, a panel of experts saw plaintiff at the prison. The experts asked questions to determine plaintiffs' competency to stand trial. The experts held: "his affect or observed emotions were blunted." "He had daydreams about killing himself by strangulation." ". His memory was impaired." ".he required cuing" he could not identify the president."

**126.** The experts: "His attention and concentration were impaired." ".he was unable to perform mathematical subtractions." ".he was unable to spell world." He could not identify the similarly of between apple/banana, bike/train, bike/train, or table/chair. '.that He appears to perform at a low average level."

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**127.**    The experts asked plaintiff to state the charges and, "He denied knowing what they were." "That He did not know why he was incarcerated." ".He didn't know if the charges were felonies or misdemeanors." ".When asked if he charged with a class A felony is staid: "I don't think so." ".When this was reviewed with him, it did not appear to register. ".He didn't display an understanding of the roles of the key court personnel."

**128.**    The Experts: ".He said that the job of his attorney was to lock him up." ".He said his attorney hasn't told him anything." ".He said his attorney wasn't doing enough." ".He required an explanation as to the role of the prosecutor." ".When asked who wants to get you the maximum sentence? ".He responded, the Judge." ".He didn't ask questions, engage in any discussions with the team and in general, appeared passive."

**129.**    The experts concluded: ".he didn't demonstrate that he had a sufficient level of understanding of the charges he faced, the roles of key courtroom personnel, specifically the need of a collaborative relationship with his attorney and what is required of him to from that relationship such as providing information." ".His passivity during the evaluation combined with his lack of fundamental knowledge of court procedure indicates he would have difficulty seeking advice from his attorney on his defense or provide information to assist in this process."

**130.**    The experts," It is unanimous opinion of the clinical team he cannot understand the nature of the proceedings pending against him and cannot assist in his defense." ".Sixty Days (60) at Whiting Forensic Division of Connecticut Valley Hospital (C.V.H.) is appropriate." ".It is seen as the least restrictive placement due to his need for comprehensive mental health evaluations to determine

**Robles v. U.S Attorney, et al**                                        **Revised Class Action Complaint**

if a change in medication is needed to better manages his symptoms of mental illness as well as to provide him with education regarding court personnel."

### 15. Transfer Whiting Forensic Division Valley Hospital

**131.**     On or about June 29, 2006, there was a hearing at the superior court for adjudication of incompetency and commitment to C.V.H. Zajaja, Miano, and Meredith were given copies of the experts competency report. Miano agreed with the contents of the report and its merits. Meredith agreed plaintiff should be committed to C.V.H. for Sixty days for restoration of competency. Zajaja took no position.

**132.**     State marshals transported plaintiff to C.V.H. in Middletown. At C.V.H., plaintiff's medication was readjusted stabilizing him, removing the stiffing of his tongue so he could talk. Staff taught plaintiff the roles of court personnel. Staff held group sessions, where they would read legal opinions, purpose questions, and asks members in the group the roles of key Court personnel.

**133.**     There was a small library at the facility were plaintiff would try to read the state statues and self-educate himself. On or about August 10, 2006, nearing the ending of the Sixty days, a staff member examined his competency to stand trial; the staff member found plaintiff regained his competency and could assist in his defense. There were no reported sexual behaviors by staff and/ or reported sexual contact with staff.

### 16. Transfer And Placement in The Department Correction

**134.**     On or about August 22, 2006, Plaintiff appeared before Miano for an adjudication competency to stand trial. The report regarding plaintiffs' competency was taken at face value. Miano asked plaintiff how old he was; plaintiff replied, "Nineteen" and the matter were ordered to proceed.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

**135.**    Plaintiff met with Meredith, and requested he send him the evidence used to support Clark's recommendation for kidnapping. Meredith sent the Evidence as requested. For a year plaintiff called Meredith over the phone at the prison and spoke to him in person on several occasions in a cell beneath the superior court.

**136.**    Plaintiff repeatedly requested Meredith move to suppress evidence, his identification, and file a motion to dismiss the charges, and/ or challenge the constitutionality of the kidnapping statue. Meredith refused to advocate the foregoing in that per policy no motions can be filed unless one is on the trial list first. Meredith was indifferent to plaintiff because he could not articulate the foregoing claims in the way a lawyer would. As result, plaintiff requests went ignored and unanswered by Meredith.

**137.**    Plaintiff showed Meredith how photo array made by Clark was prejudicial and unduly suggestive. Plaintiff requested a suppression of his identification. Meredith agreed saying, "We can file that." However, nothing was ever filed by Meredith. Plaintiff questioned Meredith on how his behavior was recommended for the crime of kidnapping. Meredith responded "You can tell somebody give me your F****** chain and that would constitute a kidnapping."

**138.**    Plaintiff requested a jury trial saying, "I don't care if I go to trail and lose as long as we bring up all the appeal issues." Meredith replied "You think an Appellate Court Jude gives a F*** about a Criminal Defendant? Plaintiff suffered marked distress, became dizzy, and did not know how to respond.

**139.**    Plaintiff met with Meredith and Montagana and brought up the requested motions in an effort to have them file. Montagana responded, "It's not your pace to tell us what to do." "You shut

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

up and sit down." Plaintiff stated, "I have a right to assist in my defense. Meredith and Montagana just looked at each other and Montagana responded, "You're messing everything up."

140.    On July 24, 2007, with help from a prisoner, plaintiff filed a complaint with the Hartford Judicial Grievance Panel about Meredith's representation, See Grievance # 07-0693.

141.    Plaintiff called Brain Carlow and wrote him letters complaining about Meredith representation. There was ex parte communication between Meredith, Susan Storey, and Brain Carlow about plaintiffs' complaints and letters. Plaintiff vocalization annoyed Brain Carlow and Susan Storey.

142.    Upon belief, they condoned Meredith's representation. Brain Carlow and Susan Storey took no action to supervise, train, or reprimand Meredith. Plaintiffs' grievance was dismissed by the Grievance penal as the panel concluded plaintiff did not establish a "prima facie case" and therefore there is no need to "investigate the claim."

143.    Upon belief, Meredith, Montagana, ,Maino, Brain Carlow and/ or Susan Storey unfairly ex parte communicated with Zajaja. There was discussion among them about plaintiff disputing the charge of kidnapping, and plaintiff attempts in excising his rights in the matter.

144.    Upon receipt of this, Zajaja, offered Fifteen (15) years executions Suspended after Fours (4) years with the right to argue for an Alternative to Incarceration (A.I.P.), Twenty (20) Years of Probation and Ten (10 years Sex Offender Registration in exchange for a disposition of two counts of kidnapping in the first degree and Sexual Assault.

145.    Meredith met with plaintiff to discuss the agreement to the disposition. Meredith stated, "It's accept or reject."   Zajaja will not offer another deal. Meredith implied retaliation and/ or

**Robles v. U.S Attorney, et al**                                          **Revised Class Action Complaint**

42

vindictiveness on part of Miano and Zajaja in a more severe sentence if plaintiff rejected the offer prolonging the case. Plaintiff told Meredith to move to suppress his confession due to him being incompetent to stand trial but that Meredith responded, "You have a better chance of getting hit by lighting."

146.    Plaintiffs' incompetency in articulating substantive and procedural claims was a motivating factor in the denial of effective assistance of counsel in access to courts on the cognizable claims herein. Meredith bullied; verbally abused, and took advantage of plaintiff impairments. Plaintiff wanted to raise legal issues here and/ or prove his innocence but that Meredith was unwilling. Plaintiff suffered, fright, insomnia, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury over an extended period of time.

147.    Plaintiff had no choice in the agreement to the disposition, as Meredith would deny him effective assistant of counsel if he tried the case. Meredith did not adequately investigate the law and adequately raise the issues of whether the underlying facts and intent of plaintiff herein supported the recommended kidnapping arrest. Meredith actions and inactions fell outside the range of reasonable competence.

### VII. ILLEGAL DISPOSITION MADE OR IMPOSED IN AN ILLEGAL MANNER

148.    On August 29, 2007, plaintiff and Meredith appeared before Miano for a disposition of plea canvass. The following took place:

149.    Miano "I'll put on record that I do have a report from Dr. D'Amora for my review I want you to be aware that have it and it plays a crucial role in the Court opinion."

**Robles v. U.S Attorney, et al**                                   **Revised Class Action Complaint**

43

**150.**    Zajaja set forth factual and the legal basis underlying the recommended charges, against the plaintiff. Zajaja amended the recommended charging information's to charge plaintiff with two counts of kidnapping in the first degree.

**151.**    Zajaja reduced the sexual assault charge in the 3rd degree to sexual assault in the 4th degree.  Zajaja represented the restraints plaintiff imposed on the victims were inherent to vigor sexual assaults.

**152.**    During the disposition of plea canvass, problems arose regarding either a plea under the Alford doctrine or a straight guilty plea to all three of the charge, as Plaintiff could not articulate his innocence competently.

**153.**    Maino: "there may be problems as far as probation go if he's in denial." Meredith: "I think David D'Amora's report really addresses that and that report would be made available to probation. "So I don't think that would be a problem in the future." Miano canvassed plaintiff but he reasserted his innocence again.

**154.**    Meredith took notice and fraudulently induced plaintiff and the Court into the plea disposition. Meredith asked Miano to add to the plea disposition staying: "Can you add in if the States Witness are believed?  Miano replied, "That's reasonable to add that." Plaintiff stated, "If the States' witnesses are believed, the jury would find that individual guilty."

**155.**    Miano replied, "Who you? Plaintiff stated, "Yeah? Miano replied "Well, it's not so much whether the States' witnesses are believed, it's more so your intent, do you understand that? "Yeah? Replied plaintiff, Miano:"You're not saying that when these young ladies come to court, you're not saying there lying or are you?

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

44

**156.** Plaintiff replied, "I'm just saying I don't agree with it." Meredith noticed the obscurities and interjected to talk to the plaintiff. Miano stated, "I'm just saying I want to give your client the best consideration I can, it's always helpful generally when a young man admits culpability especially when it's a sex case."

**157.** Miano re-canvassed plaintiff and asked, "What would the verdict be guilty or not guilty? Plaintiff stated, "If the witnesses are believed, I believe guilty." Miano responded "And you added, if the States' witnesses are believed? Meredith interjected and stated, "If the states witnesses are believed, yes your honor."

**158.** Miano "That's certainty reasonable to add that. What causes me—because here I think the witnesses appear—from what little I know, there is some factual basis for their claim. "What causes me some hesitancy is adding that addendum if the state's witnesses are believed. Would have someone—that there are no witnesses—wouldn't possibly believe the witnesses having a basis, in fact, would answer the same way."

**159.** Meredith fraudulently induced the court into an illegal disposition by stating, "I think it's clear knowing the file like I do, your honor, that he isn't denying that there was an exchange with these two young ladies. Miano responded "Unprovoked by them? Meredith replied, "Yes your honor."

**160.** Milano erroneously concluded he had competent personal jurisdiction over plaintiff and competent subject matter jurisdiction to accept the Alford plea and impose a sentence. See: M.T. 8/29/2007 pgs. 1-34

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

45

**161.**    Miano knew or should have known the plea disposition was fraudulently induced and plaintiff was having competency issues as David D'Amora submitted a Sex Offender Risk Assessment Report outlining this issue.

### 17. Plaintiffs' Classification As A Low Risk Sex Offender

**162.**    The expert David D'Amora (herein d'mora) held plaintiff "Has a significant psychiatric history, suffice it to say his history suggest a young man with various early life traumas that significantly impacted his development and helped create a history of mental health difficulties, compounded by drug use that began at a very young age." "Maturationally, he appears significantly younger than his age."

**163.**    D'Mora held: "He was reasonably cooperative and talkative in our interviews. At times he was almost manic. "I routinely had to stop his conversation refocus him, and get him to respond to the questions asked. "He was oriented to time and place but clearly interacted to indicate significant mental health issues and cognitive limitations. "His patterns of interactions were more typical of a mid-adolescent male than almost a twenty year-old-adult."

**164.**    D'Mora held "He presented with a pattern of unusual characteristics that indicated problem reality testing and lack of ability to accurately judge social situations. "He had several topics he wanted to talk about (what he did was a bad thing; he should not have done it. "He did it because he was doing drugs and he was now cheating on her back) "Given his psychiatric history and his lack of any prior charges, it appears from the various reports that his behavior was more related to his mental health decomposition than to behavior driven by sexual deviancy."

Robles v. U.S Attorney, et al                                   **Revised Class Action Complaint**

**165.**    D'Mora held: "On going mental health treatment and medication monitoring is of significantly greater importance than sex offender treatment to resolve any sexual deviancy issues. He has a history of mental illness and during the course of his pre-trial and incarceration has been deemed both fit and unfit to stand trial."

**166.**    D'Mora: "He is currently reasonable stabilized on medication but continues to have reality testing issues." "Intensive mental health and substance abuse intervention with on-going close monitoring of medication and drug test are more important interventions in this particular case.

**167.**    D'Mora: "And it would be more appropriate that mental health supervision officers than by sex offender specific supervise him. "If he remains medically stabilized we would suggest fifteen sessions of sex offender treatment, after care as recommended."

### VIII. SENTENCE WAS MADE OR IMPOSED IN AN ILLEGAL MANNER

**168.**    On October 17, 2007, Plaintiffs' mind and body was erroneously and forcibly seized, handcuffed, blackjacked in a cell beneath the superior court. Plaintiff was brough up before Miano for sentencing. The following transpired:

**169.**    Miano: "Let me ask you this; isn't there a mandatory minimum on that kidnapping 1? Zajaja: "I think--."Miano: "We must have gone over that."

**170.**    Zajaja "We did go over that and quite frankly, even before the bench, it's a split decision. Some members of the bench think that 10 years needs to be imposed, some think that 10 years can be imposed but suspended." Maino: "There is case law that says it's not a mandatory minimum of 10 years right? Zajaja:"Right."

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**171.**    Zajaja set forth factual and the legal basis underlying the sentencing, against the plaintiff to represent the restraints imposed on the victims were inherent or incidental to a vigor sexual assault. Zajaja stated: "While I recognize that he has certain mental health issues and I'm not of the opinion that incarceration properly addresses his conduct, because I do recognize that that his conduct was at least contributed to by his mental health issues."

**172.**    Zajaja: "I would feel more comfortable if I knew he was in a structured setting, a residential setting, and really, what that bears out is that we do not have that, we do not have that in the State of Connecticut.

**173.**    Zajaja: And were finding that we do not have that in the entire United States because for some reason those facilities are diminishing and we can talk about that for days about why that is. "So are we left with an alternative where the defendant should be locked up for an extended period of time? "It seems to be the only cards in my deck as a prosecutor."

**174.**    Zajaja: "I think to everyone's ability and the Social Worker with the Public Defender's Office, a program was arranged with the Institute of living Dual Diagnosis Program.

**175.**    Zajaja: "It's an out-patient basis program." "I'm not indorsing that because I think his release today is insufficient period of incarceration for these incidents for which he's involved in. "And I think we would be in a different set of circumstances, I would be probably arguing somewhat more differently if the victims had be further victimized in these incidents."

**176.**    Zajaja: "I think we've been very mindful of the fact that while he engaged in certain conduct, which is quite frightening quite alarming to each of these girls; he stopped as soon as some resistance was shown by any of them." "And I think that's quite fortunate and that is probably why

**Robles v. U.S Attorney, et al**                                         **Revised Class Action Complaint**

48

we are in this position. I just think that the twenty-some-odd that he's incarcerated now would be insufficient."

177.    Manio: "Sufficent or insufficient?  Zajaja: "Insufficent." Maino: "Let me ask you this now, coupled with what you're saying, are you opposed to the Alternative to Incarceration Program or not opposed to it? Zajaja: "My opinion would be if the Court were to impose a period of incarceration after today and still apply all the components of the Alternative to Incarceration Plan, I would be more comfortable with that."

178.    Zajaja: "But I do understand that at the end of the day, adding a few more months to his incarceration may not accomplish anything "And I do understand and recognize that maybe of most importance is his mental health issues that need to be addressed; quite possible they are most appropriately addressed at the Institute of Living." Maino: "All right. Thanks you. Mr. Meredith?.

179.    Meredith: "Yes your honor, this is a highly unusual case. "Probably the first I have seen of its kind in the five years that I have been here in the Harford Part-A. "What we have is someone whose mental health condition during the five-day period when all these incidents happened had a drastic effect on him." "I think what is significant is the report prepared by David D'Amora, who is the head of the special services, the center for treatment problem sexual behavior. "The report does a number of tests; he is determined to be a very low risk on both tests that were performed."

180.    Meredith: "And ultimately what the report says is that it would appear that intensive mental health and substance abuse intervention with ongoing monitoring of medication and drug testing are more important interventions in this particular case." "Meaning this case has more to do with mental health issues then with sex offender issues."

**Robles v. U.S Attorney, et al**                                   **Revised Class Action Complaint**

49

**181.**    Miano: "Thank you, sir. Anything you want to say? This is your only opportunity you will have. Plaintiff: "I can't, your honor, I'm too emotional. Maino: "Excuse me? Plaintiff: "I can't. I will be too emotional. Maino: "You want to pass this up for a later on or do you just want to say, you don't want to say anything?

**182.**    Plaintiff: "I don't want to say anything. Maino; "You don't want to say anything? All right. That's correct, yes or no? Plaintiff: "Yes your honor.

**183.**    Miano: "All right. This is an unusual matter. And the charges are very, very serious; of course we all know that." Miano: "I want to minimize the seriousness of this" "The minimal elements of kidnapping, we all know how broad the kidnapping statue is, but it's so broad that some initial behavior is within its purview. "

**184.**    Miano: Certainly, this isn't what the average laymen would consider a kidnapping on the facts presented, all wrong and against the law. "Now what this involves is going up to these young ladies on their way to school, and either touching their buttocks or grabbing them around the waist and in most cases the young ladies resisted, yelled and weren't pursed."

**185.**    Miano: "Now this is serious, people have the right to walk along the public areas and even in private areas without people confronting them, harassing them, or assaulting them. "Fortunately, it did not go beyond this type of behavior. "The record reflects that you have significant psychiatric problems. Mr. D'Amora, is a recognized expert."

**186.**    Miano: "I respect his judgment, "And he's indicated this matter is a matter of mental health issues. "I think that is a mitigating factor. "It doesn't in any way take the gravity and the seriousness of your conduct but in light of it I'm going to go along with the A.I.P program.

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

**187.**    Miano; "The courts going to impose a sentence of 15 years, esa after time severed, and 20 years of probation on the two kidnapping counts and 1 year for sexual assault in the fourth degree all counts are current to each other.

**188.**    Miano; "I understand you have approximately 22 month's incarceration that's a significant factor in my decision here." "I don't think this gentleman is a risk to the community based on all that I have before me." Based on D'Amora report I believe the risk is overall low."

**189.**    Meredith: "Your honor, would it make sense to make David D'Amora's report of August 6, 2007 a part of this file under seal available to probation and parole if needed?  Maino: 'It will remain under seal but its available to the department of probation and the department of correction and their agents in legitimate treatment and counseling of this gentleman."

### *18. Court Ordered Special Conditions Of Probation*

**190.**    C.G.S § 53a-30 provides (a) when imposing sentence of probation or conditional discharge, the court may, as a condition of the sentence, order that the defendant: (17) satisfy any other conditions reasonably related to the defendant's rehabilitation.

**191.**    Miano correctly ordered these special conditions to mandate intensive Mental Health Treatment and Supervision: (1) A.I.P. Program. Comply with all rules and regulations. (2) Institute of living Program Dual Diagnosis Program (3) Take all prescribed medications (4) Fifteen (15) Sessions of Sex Offender, after care as recommended by Office Of Adult Probation (O.A.P.). (5) Mental Health evaluation/Treatment (5) Seek/ maintain legit full time employment. No employment involving females 16 or younger. (6) Any contact with wife shall be facilitated through O.A.P.

Robles v. U.S Attorney, et al                                              **Revised Class Action Complaint**

**192.**    When plaintiff was formally sentenced. Zajaja nolled the remaining cases pending in the superior court at his own discretion. See: <u>M.T. 10/17/2007 pgs. 1-30</u>

## XI. QUANTUM LEAPS OF CUSTODY

### 19. Reclassification Of Risk Level

**193.**    C.G.S § 53a-30. Provides: (b) when a defendant has been sentenced to a period of probation, the Court Support Services Division may require that the defendant comply with any or all conditions which the court could have imposed under subsection (a) of this section, which are not inconsistent with any condition actually imposed by the court.

**194.**    Released to the custody to the Adult Probation plaintiffs begin his "rehabilitation and reformation". On October 23, 2007, plaintiff meet his probation officer, Petter Guysler (herein Guysler)

**195.**    Guysler brought plaintiff into his office. Plaintiff sat down. Guysler placed the ".Standard Sex Offender Conditions of probation agreement." And the ".Standard Computer Access agreement." On the table and said, 'Sign these."

**196.**    Guysler already signed and dated the agreements "Plaintiff looked at the agreements. The contracts' subtitles stated, ".Check all that apply." And "I agree to the following" Plaintiff did not understand the contracts, or there nature, and how the conditions checked applied to him.

**197.**    Upon belief, Guysler perceived plaintiff as mentally impaired with no experience of the criminal justice system and took advantage of him. Per policy, Guysler checked all conditions whether applicable or not. Guysler did not review plaintiffs' probation file, and ask background information.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**198.**    Plaintiff stated, "The Court ordered me to do fifteen Sessions of Sex Offender Treatment." Guysler responded "Yeah? In here, I tell you what to do. "You don't like it you can go back to prison."

**199.**    Plaintiff asserted, "Why can't go to parks, the library or be around my family? I want to see my kids" Guyselr responded "You're a sex offender…in here…You do what I say, or go back to prison and if you do anything without my permission, you'll go back to jail, got it?

**200.**    Plaintiff had no choice but to sign the contracts. Guysler threw copies of the contracts at the plaintiff, gave him a date to come back in, and ordered him to leave saying, "Now get outta here." Plaintiff suffered marked distress; felt depressed, had thoughts of suicide, and never left his home.

**201.**    Plaintiff told Guysler the Institute of living Program Dual Diagnosis Program did not accept him because he was a labeled a sex offender. Plaintiff told him he did not know how to find Mental Health Treatment. Guysler stated, "Find your own treatment or go to jail. Plaintiff suffered marked distress, was depressed and afraid because he did not know what to do.

**202.**    Plaintiffs' mother helped him find mental health treatment because he did not know how. Guysler didn't otherwise perform regular  drug Tests, or seek blood test to determine compliance with medication prescribed to plaintiff or talk with Mental Health providers about plaintiff mental instability once he obtained his own treatment.

**203.**    Plaintiff was diagnosed with severe affective disorders, anxiety disorders, posttraumatic stress disorder, anxiety disorder, major depressive disorder, obsessive compulsive disorder,

Robles v. U.S Attorney, et al                                      **Revised Class Action Complaint**

**204.**    Throughout plaintiffs' Six (6) month supervision, Guysler forced plaintiff to attend more than fifteen session of sex offender treatment despite it being an exacerbation to his mental illnesses. Group members of the sex offender sessions would talk about deviant sexual interest.

**205.**    Plaintiff could not relate and felt alienated in the group. Guysler forced plaintiff to relate in the group and conform to the classification of "high risk sex offender.  Guysler verbally assaulted plaintiff, harassed him and threated to place him prison if he failed to comply. Plaintiff suffered, shame, fright, nightmares, insomnia, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

**206.**    Guysler did not care if the plainff was taking his medication or doing drugs. Plaintiff was medically unstable throughout his supervision. Guysler repeatedly asked plaintiff if he had contact with young girls, if he watched pornography, and was with family without permission. Plaintiff stayed home because he was afraid he would go to jail if he did anything without Guysler's permission.

**207.**    Guysler threatened plaintiff with lie detector tests to get him to confess to watching pornography. Plaintiff confessed and Guysler stated, "You think because your honest people are going to help you" "Nobody is going to help a Sex Offender"

**208.**    When plaintiff cried to Guysler about his mental health issues and that, he could not find a job and asked him for help.  Guyslers response was: "I don't care if you have Mental Health Issues and can't find a job" "That has nothing to do with how you're supervised as a sex offender."

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

"Go pick cans out the trash if you must, if you're not self-employed or have a steady income that's violation.

**209.**    Guysler searched MySpace and found plaintiff had an account without his "permission." Guysler confronted plaintiff and told him to ".take it down or go back to prison." Plaintiff questioned Guysler on why he could not have a Social Media Account.

**210.**    Guysler responded, "Because you're a sex offender, take it down or go back to prison." Plaintiff cried and said, "Can I get permission? How long am I going to go through this?"

**211.**    Guyselr responded, "You're not getting permission to do nothing as long as you're on probation."  Guyselr:"You're luckily because some guys are on probation for life.' "You only have Twenty years. Guysler gave him a date to come back, and ordered plaintiff to deactivate the account.

**212.**    Plaintiff deactivated the account. A day later, Guysler searched the website and found the account was still active. Gusyler called plaintiff and told him to come as they needed to talk. Plainff came in as requested. Guysler confronted plaintiff about the My space account. Plaintiff explained the account takes forty-eight hours to deactivate. However, Guysler already recommended plaintiffs arrest for violation of probation sex offender conditions

**213.**    Guysler cited everything plaintiff did without his permission, and asserted plaintiff violated the ".Standard Sex Offender Conditions of Probation agreement." And the ".Standard Computer Access Agreement by having a social media account and watching pornography.

**214.**    In Guysler's recommendation for violation of probation, he asserted "Due to the **underlying nature** of plaintiffs conviction. "Plaintiff was referred to the intensive sex offender unit;

**Robles v. U.S Attorney, et al**                                                        **Revised Class Action Complaint**

this supervision was imposed because the plaintiff is **considered** a high risk sex offender; therefore the plaintiff is expected to comply with all conditions imposed upon him."

### 20. State Defendants' Ex Parte Quasi-Judicial Probation Proceeding

**215.** On May 13, 2008, The Judge, DOE 8, did not read Guylers' recommendation for violation of probation to determine reasonable suspicion. The Judge, DOE 8, signed on the relevant sections, and passed Guyslers' recommendation for violation for probation to the Clerk, DOE 9. The Clerk, DOE 9, docketed the matter and submitted the matter to the arrangement court judge.

**216.** The Prosecutor, DOE 10, did not read Guslers' recommendation for violation for probation to determine reasonable suspicion. The Prosecutor ,DOE 10, looked for the date of offence and the statue that Guysler recommended. The Prosecutor, DOE 10, erroneously recommended charging informations for violation of probation and submitted the matter to arrangement.

### 21. Formal Procedure and Practice For Violation of Probation

**217.** G.G.S.§ 53a-32 provides (a) at any time during the period of probation or conditional discharge, the court or any judge thereof may issue a warrant for the arrest of a defendant for violation of any of the conditions of probation or conditional discharge.

**218.** G.G.S.§ 53a-32 provides (b)When the defendant is presented for arraignment on the charge of violation of any of the conditions of probation or conditional discharge. The court shall review any conditions previously imposed on the defendant and may order, as a condition of the pretrial release of the defendant, that the defendant comply with any or all of such conditions in addition to any conditions imposed.

Robles v. U.S Attorney, et al                                    Revised Class Action Complaint

219.    G.G.S.§ 53a-32 provides (c) Unless good cause is shown, a charge of violation of any of the conditions of probation or conditional discharge shall be disposed of or scheduled for a hearing not later than one hundred twenty days after the defendant is arraigned on such charge.

220.    G.G.S.§ 53a-32 provides (d) No such revocation shall be ordered, except upon consideration of the whole record and unless such violation is established by the introduction of by introducing reliable and probative evidence and by a preponderance of the evidence.

### X. FIRST INFORMAL QUASI-JUDICIAL VIOLATION OF PROBATION PROCEEDING

221.    On May 13, 2008 Plaintiffs' mind and body was erroneously and forcibly seized, handcuffed, blackjacked in a cell beneath the court. Plaintiff was brought up stairs for arraignment. The arrangement Judge, DOE 11 advised plaintiff of his rights. Per policy a Public Defender, DOE 12, was standing next to plaintiff. It was determined plaintiff was indigent funding was provided so a Public Defender could be appointed at latter date.

222.    The Prosecutor, DOE 13, relied on Guyslers recommendation for violation of probation without reading it. The Prosecutor, DOE 13, asserted in 2007 the plaintiff groped and grabbed victims to commit sexual assaults constituting the crime of Kidnapping and state request bond be set at $100, 000,00.

223.    There were no arguments between the parties disputing Guyslers' recommendation of reasonable suspicion for violation of probation. Nobody meet with plaintiff downstairs prior to him coming up for arraignment to discuss Guyslers recommendation for violation of probation or whether an affidavit in opposition was warranted under the franks doctrine requesting an evidentiary hearing.

**Robles v. U.S Attorney, et al**                                **Revised Class Action Complaint**

57

**224.** Per policy a Public Defender, DOE 12, entered a waiver of a probationary hearing within 120 days on plaintiffs' behave without his consent and without discussion. The arraignment Judge, DOE 11, did not look at the probation statue to make independent conclusions of law.

**225.** The arraignment Judge, DOE 11, erroneously relied on the recommended charging informations, and conclusions of law recited by the Prosecutor, DOE 13. The arraignment Judge, DOE 11, erroneously binded plaintiffs' mind, body, and the case over to the incorrect part of the Criminal Division of the Superior Court. I.e. Part-A, bka High Court as result.

**226.** Nobody reviewed Guyslers' recommendation for violation of probation to determine reasonable suspicion. Everyone relied on Guysler assertion--what plaintiff did, violated his probation. Nobody excised independent judgment. Everybody performed according to informal established procedures or instructions from a Guysler, exercising no individual judgment or discretion.

**227.** Plaintiffs mind and body were erroneously and forcibly seized, handcuffed, blackjacked in cell beneath the court. Plaintiff was brought up before the Criminal Divisions Part-A Court Judge, David Gold (herein Gold) to be tried by Court. Plaintiff was assigned Meredith again.

**228.** Montagna was reassigned to assist Meredith in "handling of the plaintiff." A new prosecutor was assigned, DOE 14, to prosecute the case in the interest of State of Connecticut and/ or City of Hartford. Plaintiff was detained in prison on violating probation for a year.

**229.** Meredith took no action to address or fix the conditions applied by Guylser. Meredith did not investigate the law and adequately raise the issues of whether the underlying classification of plaintiff supported the recommendation for violation for probation. Meredith action and inactions fell outside the range of reasonable competence.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

**230.**     Plaintiff had no choice to but to accept an illegal disposition to violating probation. Meredith made it clear he would not be effective at a probationary hearing as described above. Plaintiff entered the illegal disposition under marked distress, as he did not have the metal stability to fight against the recommendation for violation of probation and could not articulate claims the way a lawyer would. Plaintiff suffered, shame, fright, nightmares, insomnia, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

**231.**     Plaintiff was sentenced on June 17, 2009. Gold erroneously concluded he had competent personal jurisdiction over plaintiff and competent subject matter jurisdiction to accept a plea and impose a sentence for violation of probation despite the apparent pro forma sue sponte claims herein. After the sentencing, Gold threatened to impose a more severe sentence if plaintiff violated his probation again.

### 22. Plaintiff Second Released From Prison To Probation

**232.**     Plaintiff was released to the custody to the Adult Probation to begin his "rehabilitation and reformation". On or about October 2009, Plaintiff met his probation officer, Jeff Coffey (herein Coffey) Coffey brought plaintiff into his office. Plaintiff sat down. Coffey placed the ".Standard Sex Offender Conditions of probation agreement." and the ".Standard Computer Access Agreement." On the table and said, "Sign these."

**233.**     The contracts were already filled out and signed by Coffey. The contracts' subtitle stated, ".Check all that apply." and "I agree to the following." Plaintiff did not understand the contracts and how the conditions checked by Coffey applied to him. Plaintiff had no choice in not

Robles v. U.S Attorney, et al                    **Revised Class Action Complaint**

signing. Upon information and belief, Coffey perceived plaintiff as mentally disabled with no experience with the criminal justice system and took advantage of him.

234. Per policy Coffey check all conditions whether applicable or not. Coffey did not adequately review plaintiffs' file, and did not ask background information. Plaintiff explained to Coffey the Court ordered fifteen (15) Session of Sex Offender Treatment Coffey's responded, "I read the police reports, you were going to rape them. "You do what I tell you."

235. Coffey did not care if plaintiff was taking his medication or doing drugs. Coffey did not allow plaintiff to be around his sons or go to any family gatherings. Coffey further confined plaintiff to mental illness. Plaintiff was attending capital community college to further his education.

236. Coffey called the dean at capital and said plaintiff is a high-risk sex offender and should be watched by security and staff. The dean called plaintiff to talk to him about Coffey's statements but plaintiff dropped out of school because of coffees statements.

237. Coffey didn't otherwise perform adequate drug tests, or seek blood test to determine compliance with medications, or talk with Mental Health providers about plaintiff mental instability once he obtained treatment."

238. Throughout plaintiffs' Seven (7) month supervision, Coffey forced plaintiff to attend more than fifteen session of sex offender treatment despite exacerbation to his mental illnesses. Group members of the sex offender sessions would talk about deviant sexual interest and their sexual assaults. Plaintiff could not relate and felt alienated in the group. Plaintiff suffered, shame, fright, nightmares, insomnia, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

**239.**    Coffey forced plaintiff to relate in the group and conform to the classification of "high risk sex offender. Coffey subjected plaintiff to verbal assaults, threat of physical fore through the process of imprisonment if he did not comply. Coffey harassed the plaintiff, and was deliberate indifference to his Mental Health, Treatment, and Supervision. Plaintiff was medically unstable throughout supervision. Plaintiff became severely depressed; he stayed home because he was afraid he would go to jail if he did anything without Coffey's permission.

**240.**    On March 22, 2010, Coffey recommended a violation of probation because plaintiff was falsely arrested and contesting the charges. Coffey committed fraud, perjury, misrepresentation, or falsification of evidence in order recommended there was reasonable suspicion to arrest plaintiff for violation of sex offender conditions of probation.

**241.**    Coffey's recommendation for violation of probation on reasonable suspicion stated, "Due to the **underlying nature** of plaintiffs conviction. "Plaintiff was referred to the intensive sex offender unit; this supervision was imposed because the plaintiff is **considered** a high risk sex offender; therefore the plaintiff is expected to comply with all conditions imposed upon him."

### *23. State Defendants' Second ex Parte Quasi-Judicial Probation Proceeding*

**242.**    On March 24, 2010, The Judge, DOE 15, did not read Coffeys' recommendation for violation of probation to determine reasonable suspicion.  The Judge, DOE 15, signed on the relevant sections, and passed the recommendation for violation of probation along for processing to the Clerk, DOE 16. The Clerk, DOE 16, docketed the matter and submitted the matter to the arrangement court.

**243.**    The Prosecutor, DOE 17, did not read Coffeys' recommendation for violation of probation to determine reasonable suspicion. The Prosecutor, DOE 17, looked for the date of offence

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

and the statue that Coffey recommended. The Prosecutor, DOE 17, erroneously recommended charging information's for violation for probation and submitted the matter to arrangement.

## XI. SECOND INFORMAL QUASI-JUDICIAL VIOLATION OF PROBATION PROCEEDING

244.    On March 24, 2010, Plaintiffs' mind and body were erroneously and forcibly seized, handcuffed, blackjacked in a cell beneath the court. Plaintiff was brought up before the arraignment Judge, DOE 18, and read his rights. A Public Defender, DOE 19, was standing beside plaintiff. It was determined plaintiff was found indigent; funding was provided so a Public Defender could be appointed later. Plaintiff bond was erroneously set at $150, 00.00.

245.    The Prosecutor, DOE 20, erroneously affirmed the recommended charging information's for violation of probation, and asserted plaintiff was convicted in 2007 because he groped and grabbed victims to commit sexual assaults, constituting the crimes of two counts of Kidnapping. There were no arguments disputing reasonable suspicion for violation of probation. Nobody meet with plaintiff downstairs prior to him coming up for arrangement to discuss Coffey's recommendation for violation of probation or if he should submit an affidavit in opposition under franks.

246.    The Public Defender, DOE 19, entered a waiver of a probationary hearing within 120 days on plaintiffs' behalf without his consent and without discussion. The arraignment Judge, DOE 18, did not look at the probationary statue to make independent conclusions of law. The arraignment Judge, DOE 18, erroneously relied on the recommended charging information's, and conclusions of Prosecutor, DOE 20.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

247.    The arraignment Judge, DOE 18, erroneously binded plaintiffs' mind, body, and the case over to incorrect part of the Criminal Division of the Superior Court. I.e. Part-A, aka High Court as a result. Nobody reviewed Coffeys' recommendation for violation of probation to determine reasonable suspicion everyone relied on Coffey's assertion--what plaintiff did, violated his probation. Nobody excised independent judgment. Everybody performed according to established informal procedures or instructions from a Clark, exercising individual judgment or discretion.

248.    Plaintiff was assigned Public defender, Bruce Lorenzen (herein, Lorenzen). Plaintiffs mind and body were erroneously and forcibly seized, handcuffed, blackjacked in a cell beneath the court. Plaintiff was brought before up to the Criminal Divisions Part-A Court Judge, David Gold (herein Gold) to be tried. A new prosecutor was assigned herein, DOE 21, to prosecute the case in the interest of the State of Connecticut and/ or City of Hartford.

249.    Plaintiff was held on violation of probation for a year. Plaintiff was off and on suicide watch, and off and on medication, because he gets marked distress when confined 23 hours day in the department of correction. Plaintiff was not provided the medication he was prescribed the in community. Plaintiff was prescribed dissimilar medication that causes increased suicidal thoughts.

250.    Lorenzen took no action to address or fix the sex offender conditions applied by Coffey. Lorenzen did not adequately investigate the law and adequately raise the issues of whether the underlying sex offender classification of plaintiff supported the recommendation for violation of probation or whether *Salamon* applied to plaintiffs' when the decision was rendered. Lorenzens action and inactions fell outside the range of reasonable competence.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**251.**    Lorenzen told plaintiff he could win on the new case because he had an alibi defense and because the prosecutor, DOE 21, did not believe the victims account of the event. Lorenzen fraudulently misrepresented plaintiff would lose the violation of probation because of "police contact."

**252.**    Lorenzen further fraudulently concealed or suppressed the Salamon decision from plaintiff to induce him to an illegal disposition. Plaintiff pleaded guilty on the advice of Lorenzen and his concealment of *Salamon*. Plaintiff suffered, shame, fright, nightmares, insomnia, loss, anxiety, grief, bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

**253.**    On January 19, 2011, Gold erroneously concluded he had competent personal jurisdiction over plaintiff and competent subject matter jurisdiction over the case and imposed One (1) year for a new charge concurrent to three (3) years for violating Probation, remaining balance of probation.

### *24. Notice Of The Courts Holding In Salamon*

**254.**    In May of 2011, while plaintiff was serving three years for Coffey's recommendation for violation of sex offender conditions of probation. Plaintiff  found out by a class member that on July 1, 2008, the Connecticut Supreme Court officially released its public decision in *State v. Salamon*, 287 Conn. 509, 546-48 (2008) *State v. Sanseverino*, 287 conn. 608 (2008)

**255.**    The Supreme Court held: (1) for over 30 years, the kidnapping has been misinterpreted. (2) there was ambiguity at what point the jurisdictional elements in  the statutory definitions of restrain and abduct cross. (3) this jurisdictional defect encourages prosecutors to charge a kidnapping

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

when the conduct was sexual in nature.(4) this decision is not a reinterpretation of kidnapping statue but rather a statement on what the law has always been, we are issuing procedural and substantive rules, clarify range of conduct and the class of persons the law punishes. (5) We hold a defendant cannot be convicted of kidnapping, in conjunction with another crime, if the confinement or movement is merely inherent or incidental to the commission of the other crime, (6) If the restraint is inherent in nature to the office there is no need for a jury trial.

### 25. Pro Se Attempt To Get Access To Courts On Claims Herein

256.    On July 22, 2011, helped by a class member, plaintiff moved to correct an illegal sentence (C.P.B. § 43-22) arguing: (1) he was convicted based on conduct not considered by Maino. (2) the kidnapping statute was unconstitutionally vague as applied to his conduct given *Salamon*. (3) the kidnapping statute is unconstitutionally vague in that the definition of unlawful restraint and abduct is still subject to ambiguity as applied in light of *Salamon*. For relief, plaintiff requested that the dispositions be corrected.

257.    Plaintiff requested an attorney. Meredith appeared read the pro se motion, confined himself to it, claimed it had no sound basis and withdrew his appearance. The Prosecutors' Offices didn't physically appear before the court.

258.    Plaintiff preceded pro se and made argument. The motion was later dismissed by Judge, Joan K. Alexander (herein Alexander) as her having no jurisdiction to hear the merits of plaintiffs' claims according to established procedures or instructions of state common law.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

65

**259.**    Plaintiff was incompetent in the appellate process and could not appeal Alexander's decision dismissing his motion. Plaintiff is indigent and did not have the assistance of the Public Defender's office to help him file an appeal.

**260.**    State Defendants do not hold up to their affirmative obligation to provide adequate law libraries or adequate assistance from persons trained in the law to help the plaintiff class prepare and file writs of error coram nobis, writs of mandamus, motions to arrest the judgments or a lawsuit challenging procedural errors, jurisdictional errors or sentencing errors as needed herein.

**261.**    State Defendants contract with and provide state and federal funding to the inmates legal assistance program and the office of the public defender but that these entities do not provide adequate or autonomous assistance of persons trained in the law about writs of error coram nobis, writs of mandamus, motions to arrest the judgments or a lawsuit challenging procedural errors, jurisdictional errors or sentencing.

**262.**    State Defendants deny the preparation and filing of meaningful legal papers when requested by the plaintiff class. Plaintiff has contacted the inmate legal assistance program and the public defender's office personally about the claims herein but he has been denied assistance and/ or an investigation into his clams for no rational reason in violation of federal law.

**263.**    While in prison, plaintiff read everything that dealt with law because nobody who help him. Through marked distress, pain, and suffering, plaintiff tried to educate himself on procedural and substantive law so he could articulate his claims the way a lawyer would.

**264.**    On March 15, 2012, plaintiff filed another motion to correct an illegal sentence arguing he had the right in consideration of *Salamon* at his sentencing. Plaintiff cited in his motion statements

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

made by Maino at his sentencing. Alexander received the motion and the clerk's office sent a letter stating, "Alexander would like to see the transcripts cited in your motion."

265.    State defendants knew plaintiff could not provide copies to the clerk, the prosecutor and the court because he was indigent and could not afford to make copies of the transcripts while in prison. State Defendants take advantage of the plaintiff classes indecency status and use it in retaliation to fatigue the class into compliance to obstruct challenges to fraudulently consented plea dispositions.

266.    On June 12, 2012, plaintiff filed a pro se motion for permission to fax over twenty (20) pages so the court and the prosecutor could have copies of the transcripts. In his motion, the plaintiff contended, ".petitioner has attempted numerous times to allow the clerk make the relevant copies a requested by the court but that the court has ignored or eluded the actual request." On March 25, 2012, Alexander denied the motion for permission to fax over twenty (20) pages for no rational reason.

267.    Plaintiff was incompetent in the appellate process and could not appeal Alexander's denial of his motion. Plaintiff did not have the assistance of a Public Defender or the inmate legal assistance program to help file an appeal.

268.    On March 29, 2012, plaintiff filed a pro se motion for transcripts in his renewed efforts to provide the transcripts requested. Plaintiff contended ".Petitioner field a habeas corpus on January 9, 2012 and "without access to the pretrial transcripts and the documents requested the petitioner will be effectively precluded from presenting to [his court] anything other than conclusion allegations

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

based on his memory of the pretrial proceedings which at this late date has been distorted by the passage of time."

269.    Plaintiff further contended, ".the petitioner has contacted his pervious appointed attorney who obtained a copy of the requested documents as of right but that counsel has refused to provide the petitioner with the documents requested."

270.    On or about March 2012 a law clerk sent a letter to the plaintiff stating, "Your motion is being returned to you. If the transcript is wanted for a habeas or civil matter, you need to file the motion where that matter is pending.  Plaintiff, motion to correct filed on March 15, 2012, was never address by Alexander, upon belief Alexander or the Post-conviction Law clerk destroyed it.

271.    On or about April 2012, plaintiff sent Freedom of Information request (F.O.I.) to Robert Meredith, Brain Carlow and/ or Susan Storey requesting his discovery file. Upon belief, Alexander, Meredith, Lorenzen, Brain Carlow and/ or Susan Storey unfairly ex parte communicated with each other about plaintiff F.O.I request. Besides, the motions, he filed requests for transcripts and the evidence in his case as a result, Meredith sent plaintiff the file in his case.

272.    In 2012, with help from a class member, plaintiff filed a complaint with the Hartford Judicial Grievance Panel about Meredith's representation and Zajaja condor with the court, See Grievances #12-0018 and # 12-0016. The grievance panel dismissed plaintiff complaints because he failed to establish a Prima facie case and therefor no need to investigate.

273.    In 2012, plaintiff went to trial on termination of his parental rights. **See: Docket # H12-CP10-013121-**A. The department of children and families claimed that Plaintiffs son ' was neglected in prior proceedings **as he was in prison**, that the plaintiff was given specific steps for reunification

Robles v. U.S Attorney, et al                                      **Revised Class Action Complaint**

with his son but that plaintiff failed to encourage the belief that within a reasonable amount of time he could resume a reasonable position in his sons' life.

274.    Plaintiffs' parental rights were terminated by the department of children and families as his "**past imprisonment was considered future imprisonment**" as a result plaintiff suffered anxiety, grief, bowel dysfunction, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

275.    On or about March 2012, Plaintiff called Brian Carlow about Lorenzens' representation. Plaintiff explained Lorenzen should have moved to arrest the judgment or move for dismissal. Carlow did not understand what a motion to arrest the judgment was and did not know how to do to help the plaintiff.

276.    Plaintiff called Lorenzen over the prison phone and expressed his dissatisfaction of his representation in the probation matter for not taking any action given *Salamon*.  Lorenzen responded, ".I didn't know what to do, maybe it was a good thing. Plaintiff contended, ".it was as like I had no lawyer present and you were better letting me hit with the suspended sentence." Lorenzen responded plaintiff was not "thinking clearly."

277.    Brain Carlow, Susan Storey, Meredith and Lorenzen never contacted plaintiff a Hispanic male, about his formal motions seeking correction of his disposition under *Salamon* against the prosecutor's office and otherwise failed to investigate it and to take remedial action.

278.    The office of the public defenders and the prosecutor office have investigated formal pleadings seeking correction of white male plaintiffs and have taken remedial action to address the situations that caused such pleadings.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**279.**    The failure by the public Defendants office and the persecutors offices to investigate plaintiff's motion and to take remedial action constitutes race discrimination. The race discrimination caused plaintiff over detainment.

**280.**    State defendants have an Offender Based Tracking System (OBTS). The OBTS is the single source repository of criminal offender data that is accurate, verifiable, timely, and available to the criminal justice agencies involved in all phases of the criminal justice process.

**281.**    The Judicial Branch, Executive Branch Department of Public Safety, and   Department of Correction all have access to The OBTS to support their agencies legacy tracking systems and to provide criminal justice data to the OBTS, based upon "triggering events."

**282.**    Despite the OBTS and the public *Salamon* opinion nobody to petitioned the court for an order directing the plaintiff  classes release an action entirely dependent upon everyone's role as an advocate for the court and/ or state because state defendants were deliberately indifferent to the *Salamon* decision.

**283.**    Everyone knew the kidnapping statue as applied to the plaintiff class was invalidated …they knew the plaintiff class was incarcerated under the invalid statute as applied, and they knew this effected the plaintiff classes' dispositions, sentences, and probation as applied... [and] nobody inform the trial court that the Plaintiff['s] classes sentences was no longer authorized by law when they were litigating cases under the *Salamon* decision when the plaintiff classes "violation of probations were pending before them."

**Robles v. U.S Attorney, et al**                                                **Revised Class Action Complaint**

**284.**    No one adequately investigated the law and adequately raised the issues of whether the subject matter jurisdiction of court was void or voidable based on *Salamon*. Everyone's action and inactions fell outside the range of reasonable competence.

### 26. Plaintiffs Release From Prison After Notice Of The Salamon Decision

**285.**    On July 31, 2012, plaintiff met with a Probation officer DOE, 22, in prison prior to his release from custody in preparation of his return to supervision in the community under the "direction of the probation sex offender unit."

**286.**    During the meeting, plaintiff was presented with the" standard sex offender conditions "of probation agreement and the computer access agreement. The contracts presented by the probation officer DOE, 22, were already signed and filled out.

**287.**    The contracts subtitles were "check all that apply and I agree to the following." Plaintiff wrote threat, coercion, and duress above the signature line and signed the contracts. The probation officer DOE, 22, took the contracts, did not read them, and left.

**288.**    On December 28, 2012, plaintiff was released from the custody of the department of correction to begin his "rehabilitation and reformation." Plaintiff meet his probation officer, Gabriel Caminero (herein Caminero) He brought plaintiff into his office. Plaintiff sat down. Caminero placed the ".Standard Sex Offender Conditions of probation agreement." and the ".Standard Computer Access Agreement." On the table and said, "Sign these."

**289.**    The contracts were already filled out. The contracts' subtitles stated, ".Check all that apply." and "I agree to the following." Plaintiff signed them, as these were the same contracts he signed on July 31, 2012 under threat, coercion, and duress. Caminero supervised plaintiff for some

Robles v. U.S Attorney, et al                                                    **Revised Class Action Complaint**

time until Plaintiff was assigned a new probation officers, Tom Narcwitiz (herein Narcwitiz) and then Brandon Doolittle (herein Doolittle)

290.    Per policy, Caminero, Narcwitiz, and Doolittle checked all conditions whether applicable or not.  Caminero, Narcwitiz, and Doolittle did not adequately review plaintiffs' file, and did not ask him background information. Plaintiff explained to them the Court ordered fifteen Session of Sex Offender Treatment they all responded "I read that, and I'm going to talk to the Chief about that but until then I have to do my job."

291.    Caminero, Narcwitiz, and Doolittle did not care if plainff was taking his medication. They did not allow plaintiff to be around his sons or go to any family gatherings despite no evidence to support such restrictions pursuant to an expert opinion or court order. When plaintiff became romantically involved with a women. Caminero asked plaintiff for his girlfriend's number "to talk to her." Caminero ask her if he could "go to her place to see if she had kids." as a result they broke up.

292.    Caminero, Narcwitiz, and Doolittle did not perform regular drug tests, seek blood test to determine compliance with medication, or talk with Mental Health providers about plaintiff mental instability. Throughout plaintiffs' supervision under Caminero, Narcwitiz, and Doolittle, plaintiff was forced to attend more than fifteen session of sex offender treatment despite it being an exacerbation to his mental illnesses in that group members in the sessions would talk about deviant sexual interest. Plaintiff could not relate and felt alienated in the group.

293.    Caminero, Narcwitiz, and Doolittle forced plaintiff to relate in the group and conform to the classification of "high risk sex offender. They subjected plaintiff to verbal assaults, threat of physical fore through the process of imprisonment if he did not comply. Caminero, Narcwitiz, and

Doolittle were deliberate indifference to plaintiff Mental Health, Treatment, and Supervision. Plaintiff was medically unstable throughout supervision.

294.    Plaintiff flied an administrative grievance conserving his treatment and upon belief, they were confiscated as a result plaintiff suffered, shame, fright, nightmares, insomnia, loss of consciousness, anxiety, grief bowel dysfunction, dizziness, headaches, emotional disturbance, appetite loss, weight loss, pain, marked distress, and suffering which resulted in physical injury.

295.    Plaintiff could not competently articulate his claims to file a civil action. In 2012, plaintiff attended Branford Hall for an education in paralegal studies so he could file the present civil action pro se. Plaintiff took classes on substantive and procedural law and was taught by practicing lawyers and prosecutors. It took plaintiff two years to obtain a diploma because of his mental impairment. Plaintiff was given extra time on tests because of his mental impairments.

296.    On November 2014, Plaintiff obtained a diploma in paralegal studies from Branford Hall. Plaintiff attended Branford Hall to place him in a position to act as advocate of the court when the time came Plaintiff was not receiving effective assistance of counsel or access to court on his claims.

297.    During this period on or about May of 2012 Plaintiff e-mailed the whole Attorney General Office about the *Salamon* opinion. Plaintiff asked why the Attorney General has not requested a formal opinion from the Legislative Research, Office of (OLR) about *Salamon.*

298.    Out of the whole Attorney General Office, two (2) Assistant Attorney Generals, responded. One (1) stated only an administrative agency could request an opinion from the OLR office. The second (2) one replied, ".As a matter of personal philosophy, I believe that when

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

73

confronted with the darkness of ignorance, it is far better to curse the darkness than to light any candles. ".We are that kind of moronic in Connecticut." Sooner or later, a factual circumstance will arise which makes that which is on the books look insane and stupid."

299.    In response to plaintiffs e-mail to the Attorney General Office. On October 1, 2013, Michael Lawlor and Daniel P. Malloy conspired with other legislatures to increase the mandatory minimum sentence for 1st degree kidnapping from one to 10 years.

300.    The state defendants reinstated the 10-year mandatory minimum sentence for 1st degree kidnapping against the plaintiff class in retaliation to the plaintiffs' e-mail, his challenges to the statue, and the potential new trials resulting.

301.    On April 24, 2013, the state defendants also changed the crime of 4th degree sexual assault in retaliation. the state defendants made it so the new law no longer required that the plaintiff contact be intentional but left in place the requirement that the plaintiff intends to (1) derive sexual gratification from the act, (2) degrade, or humiliate the victim.

302.    Plaintiff filed a complaint with the United States Department of Justice for intervention. On December 13, 2013 plaintiff received a letter from Ndidi N. Moses. The letter stated "you have alleged that Connecticut's Kidnapping law discriminates against Hispanics.

303.    We have reviewed the allegations in your complaint and have decided not to investigate your complaint or take any further action." Unfortunately, due to the hundreds of complaints received by our office each year, we do not have the resources to address every issue." You may wish to contract your attorney to determine what other remedies may be available." ".We regret we are unable to assist you.

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

**304.** Plaintiff filed a complaint with the Attorney General Office for intervention. On January 27, 2016, plaintiff received a letter from Assistant Attorney, General Mark F. Kolher,. The letter stated ".we have received your complaint about certain criminal matter in the superior court.

**305.** ".This office does not have the authority to investigate or review criminal matters or the actions of a court, to provided legal advice or representation to private individuals or intercede in matters such as this. ".Accordingly, I suggest you consult with a private attorney regarding your legal rights and options in this matter. I am sorry this Office is unable to be of further assistance

**306.** Meanwhile, besides plaintiff's effort to seek habeas and appellate relief, plaintiff attended Branford Hall and obtained a paralegal diploma to pursue a renewed motion to correct an illegal sentence. On September 3, 2014, while his habeas petition and appeal was pending, plaintiff move to vacate or correct an illegal sentence or in the alternative, for a Writ of Error Coram with Alexander court.

**307.** Plaintiff argued that the *Salamon* decision rendered his sentence unconstitutional. On March 19, 2015, Alexander dismissed plaintiff motion to correct an illegal sentence, holding that because plaintiff was essentially challenging the validity of his conviction, she lacked jurisdiction over the claim, because the claims sought to challenge his convictions rather than his sentence. Alexander also dismissed the petition for a Writ of Error Coram Nobis, due to the untimely filing of the petition,

**308.** On April 30, 2015, Plaintiff appealed the dismissal of his motion to correct an illegal sentence to Dipentima, (the Appellate Court). On April 30, 2016 plaintiff provided the Attorney

**Robles v. U.S Attorney, et al**                                                    **Revised Class Action Complaint**

General's Office notice he was challenging the constitutionality of the kidnapping statue. The Attorney General's Office never appeared to defend the statute.

## XIII.   CONSPIRACY TO DETAINEE AND FRUSTRATE ACCESS TO COURTS

309.    On or about June 2016, Plaintiff sent e-mails to Zajaja from his phone. The emails indicated, "Sent from iphone." In the emails plaintiff asked Zajaja modify his convictions to unlawful restraint. Zajaja did not respond to any of plaintiff's emails. Plaintiff sent Zajaja and the office of adult probation his habeas appellate brief pending in the appellate court and an affidavit from his ex-wife stating that his sons' medication was dropped off at their home by a police officer.

310.    On or about June 2016, Brandon Doolittle, (herein Doolittle) and Zajaja, unfairly ex parte communicated with each other to conspire to falsely arrest the plaintiff. They did so intending to prevent plaintiff from filing his prose reply motion to correct brief due in the appellate court, or to seize plaintiff cell phone to obtain direct evidence of his mental state at the time of the offence for later prosecution of the plaintiff if he was granted a new trial.

311.    Plaintiff was scheduled to meet Doolittle at probation on June 17, 2016. On June 16, 2016, Coffey, and Doolittle appeared at plaintiffs home at 5:30 a.m. Plaintiff opened the door and they entered. Plaintiff sat on the couch in the home while they stood in front of him.

312.    Doolittle stated to the plaintiff, "Is your phone off? I was trying to call you. Plaintiff replied, "No it's on." Doolittle stated ".take it out I'm going to call you now." Plaintiff removed his cell phone from his pocket and Doolittle called him. Plaintiff rejected the phone call as Doolittle was standing in front of him.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**313.** Doolittle removed from his person a print out of a social media account and told plaintiff "this is you; let me see your phone." Plaintiff looked at the print out it looked like a social media account from a previous violation or a newly created account with a photo of the plaintiff from a previous social media account on file.

**314.** Plaintiff replied, "No that not me." I have no social media account ." Doolittle sat next to plaintiff and stated ".let me see your phone, what you are hiding? Plaintiff replied, "I'm not hiding anything, I passed all my polygraph tests; and you know I use my phone to contact and email attorneys conserving my pending cases.

**315.** Coffey replied, "I'm not sure we have enough to arrest him." A witness living in the home with the plaintiff opened his door because he heard Coffey and Doolittle talking abrasively.

**316.** Understanding what transpiring, plaintiff got up from the couch to give the witness possession of his phone. When plaintiff tried to pass Coffey to give possession of his phone to the witness Coffey grabbed him and tried to remove it from him. Plaintiff pushed him away and said, "Why are you grabbing me?

**317.** Coffey was aware the only exit was the front door. The kitchen exit is blocked by a washer machine Coffey knew this as he saw it in plain view. Coffey replied, "I thought you were trying to leave." Plaintiff threw his cell phone to the witness and told him, the phone is yours now." Coffey stated, "I think we need to call the chief."

**318.** Doolittle called Kevin Lawrence (herein Lawrence); they spoke briefly. Doolittle gave plaintiff his cell phone to talk to Lawrence. Lawrence stated, "Give up the phone or come in."

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

Plaintiff replied, "I have a right to object to unlawful treatment." Doolittle stated, "You singed the probationary contract."

319.    Plaintiff stated, "the contract was already filled out and signed before I got there it's not legal; and I'm not a high risk sex offender." Lawrence replied, "Either you give up the phone or come in." Plaintiff started "You're going to have to come get me because I'm not giving up my phone or coming in. "I use my phone to communicate with my lawyers and this isn't legal."

320.    Lawrence stated, "You're making this difficult "all we want is the phone" put Doolittle back on the phone." Lawrence and Doolittle spoke briefly. Doolittle told plaintiff to come in on June 17, 2016 as scheduled. Coffey and Doolittle then left.  Forty-five minutes later, plaintiff called Doolittle to confirm he was come in on Friday. "Doolittle knew plaintiff has a cell phone and had internt access because he has plaintiff e-mail on file, pleadings of filed by the plaintiff with his cell phone number and e-mail address.

321.    Plaintiff was aware there was a conspiracy to prevent him from filing his pro se motion to correct reply brief in the appellate court or to seize his phone to obtain new evidence for subsequent prosecutions of the plaintiff in the event he was granted a new trial. On June 16, 2016, plaintiff filed his pro se reply brief and on June 17, 2016 Guysler arrested plaintiff when he appeared at probation as scheduled

322.    Doolittle and Coffey committed fraud, perjury, misrepresentation, or falsification of evidence to recommend there was reasonable suspicion for violating probation.

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

### 27. State Defendants' Third Ex Parte Quasi-Judicial Probation Proceeding

**323.**    When Doolittle's recommendation for violating probation was presented to the Judge, DOE 23, it was not read to determine reasonable suspicion. The Judge, DOE 23, signed on the relevant sections, and passed Doolittle's' recommendation for violation for probation along for processing to the Clerk, DOE 24. The Clerk, DOE 24, docketed the matter and submitted it to the arrangement.

**324.**    The Prosecutor, DOE 25, did not read Doolittle recommendation for violation for probation to determine reasonable suspicion. The Prosecutor, DOE 25, looked for the date of offence and the statue Doolittle recommended. The Prosecutor, DOE 25, relied on Doolittle's recommendation for violation for probation submitted the matter to the arrangement.

### 28. Pro Se Challenge To The Trial Courts Subject Matter Jurisdiction

**325.**    C.P.B 36-4 provides instead of issuing an arrest warrant, even where probable cause has been found, the judicial authority may direct that a summons and complaint be issued to an accused person u under Sections 36-7 through 36-10, unless the judicial authority determines that it is necessary to take the accused into custody. (b) failing to comply with this section shall not be a ground for dismissal of an information, but shall entitle the accused to be released upon a written promise to appear where none of the foregoing reasons shall be found to exist.

**326.**    On June 17, 2016, Plaintiffs' mind and body was erroneously and forcibly seized, handcuffed, blackjacked in a cell beneath the court. Plaintiff had no access to a standard affidavit form, a notary or a an ADA accommodation form to gain access to courts on the claims herein

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

79

**327.**    Plaintiff appeared before Judge Carl E. Taylor (herein Taylor) for disposition of arrangement. Taylor read plaintiffs rights. Plaintiff waived counsel and preceded Pro se.

**328.**    Plaintiff asserted Taylor had no competent subject matter jurisdiction over a violation of probation because there was no judicial determination of the *Salamon* factors to justify a kidnapping disposition in the first place

**329.**    Plaintiff has asserted the case was not screened in the arraignment court as a matter of law. For the case to be transferred to the applicable part of the criminal division, it has to be screened first. Taylor asserted, "No it doesn't" Plaintiff contended there needs to be a factual and subject matter jurisdictional determination. Taylor replied, "I don't know." Plaintiff asserted his court has a judicial obligation to determine subject matter jurisdiction. Taylor told plaintiff "quite"

**330.**    Taylor recited the procedural history and asked plaintiff if he represented his self in previous violations of probation. Plaintiff replied, "No, I didn't but I wish I had. At the time, I wasn't competent enough to represent myself. Since I have been released from prison in 2007, I have – I went to school. I got an associate's degree in paralegal studies.

**331.**    Plaintiff: " And in order to represent myself in these – these proceeding because I feel --- my rights against cruel and unusual punishment have been violated because the state modified convictions of people who raped there victims but because I did not do such a thing they refuse to modify my convictions. And that is cruel and unusual punishment.

**332.**    Taylor responded, "My mother used to tell me something when I was a child, a little bit of knowledge can be a dangerous thing." The plaintiff responded, "It's an absurd and unconscionable

Robles v. U.S Attorney, et al                                        **Revised Class Action Complaint**

result, your honor." Taylor responded, "This does not appear to be working "Plaintiff replied this is unfair. This is not right what is happing.

333.    Taylor responded, "This does not appear to be working. You need --- you need counsel." Plaintiff asserted, "Nobody understands what's going on here, your honor. I pled guilty in '07, the Supreme Court changed the law in '08, and they made it retroactive. "This court is refusing to determine whether it has subject matter jurisdiction. You yourself can't determine whether this is actually a kidnapping."

334.    Taylor replied, "Well, you've plead guilty to it sir so it is." Plaintiff asserted, "well your honor, I'm challenging the subject jurisdiction of the court." Taylor asserted, "Well, at any rate, you're presently charged with violation of probation. Plaintiff asserted, "The instant offence is void." Taylor replied, "You're running – you're running the risk of ending up with a lot of time in jail."

335.    Plaintiff replied, "Well, you know what? Then that's what it will be then." "This is what's going to happen: I have two appeals pending. If this court doesn't want to give me a PTA because I did nothing wrong." Taylor replied, well, I have not gotten to bond yet.  Plaintiff asserted, "I haven't done anything wrong, your honor." I've been on probation for five years and I have done nothing wrong." There is no clear and convincing evidence here."

336.    Taylor replied, "Alright. Now Madame Bail Commissioner, what is your recommendation? The Bail commissioner replied, "Your honor, I don't have my sheet for this file. I was never given a sheet." Taylor replied, "All right. What is the recommendation of the state? The state replied, "He does owe a substantial period of time on probation. "He has been violated at least

**Robles v. U.S Attorney, et al**                                      **Revised Class Action Complaint**

two times in the past. Based on the nature of the violations, your honor, I would ask for $150,000 and on each.

**337.**    Taylor stated, All right. And what do you wish to say referring the issue of bond, sir? Plaintiff replied, "Your honor, I don't think I should be held. I think that I should be released back on probation. "I have two appeals pending. I would like to go back to argue my appellate brief. Taylor replied, "All right."

**338.**    Plaintiff replied, "I went years without incident on probation, your honor. I passed drug tests they have given me polygraph test because of the nature of the instant offense, I haven't done anything wrong."

**339.**    Taylor replied, "Well, according to the warrant they're indicating that – they're requesting the violation for violating the condition to submit to the search of the home, possessions, or vehicle when approbation officer has a reasonable suspicion to do so and something about failing to comply with a computer access agreement."

**340.**    Plainff replied, No, your honor, I would like to submit this into evidence. This is the original probationary contract. Taylor replied, "Not today sir, you need to save that for the hearing." "I'm going to set Bond at $150,000. 00 cash or surety on each file. Plaintiff replied, "Can I get a copy of the transcripts of these proceeding? Taylor responded, "You can get them if you can pay for them." Plainff asserted he couldn't afford to get the transcripts." Taylor set a date for a violation of for violating probation hearing as a form of retaliation.

**341.**    Plaintiff asked Taylor, "Your honor, did this court address subject matter jurisdiction? Taylor replied, "No, I don't have to your all set. "Plaintiff asked that Taylor recuse himself because

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

82

he refused to determine subject matter jurisdiction and Taylor ordered plaintiff be physically removed from the courtroom by marshals and imprisoned.

342.    When plaintiff was brought down stairs and placed in is cell, he tried to kill himself. Plaintiff took off his t-shirt and shoelaces off and tried to hang himself in the cell but the shirt and shoelaces ripped as they was strong enough to support this weight. Nobody knew of plaintiff-suicide attempt because there were no cameras in the cells. Plaintiff was transported to Hartford correctional facility. Plaintiff was housed in a single cell based on his mental health statues.

343.    On July 2, 2016, plaintiff flied a pro se motion to arrest the judgment (C.P.B. § 42-56) and a declaration in support prior the imposition of the sentence of probation. Plaintiff argued the trial court did not have jurisdiction to adjudicate the violation of probation because there was no subject jurisdictional determination of the underlying conviction given *Salamon.*

344.    Taylor left the Hartford Superior Court and went to the New Brittan Superior Court but prior to leaving on July 22, 2016, he ordered plaintiffs violation of probation hearing in retaliation for plaintiff challenge to the subject matter jurisdiction of the court given *Salamon*. Plaintiff tried to waive the hearing so he could continue to argue jurisdiction but Taylor ignored his wavier of the probation hearing in retaliation.

345.    On June 7, 2016, the Post-Conviction law clerk sent plaintiff a letter regarding his motion to arrest the judgment stating "You must file two motions, each with just one docket number, not one motion with multiple docket numbers on them and "the motions must be single sided, not double sided."

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**346.**    Plaintiff re-filed his pro se pleadings and sent a letter stating, "lawyers have filed double sided motions with multiple docket numbers on them why are your treating me differently? Plaintiff heard nothing from the Post-Conviction law clerk. Upon belief, Plaintiff motion was confiscated or destroyed.

**347.**    On August 12, 2106, plaintiff field a motion for miscellaneous disposition (C.P.B. § 39-33) and an affidavit in opposition to the recommendation of Doolittle's violation of probation. Plaintiff asserted Doolittle knew he had a cell phone because he would call him, he knew plaintiff was a low risk sex offender, and he knew plaintiff was using his cell phone to communicate with his lawyers in pending cases.

**348.**    Plaintiff asserted he should have been supervised as a mental health client, he was not a high-risk sex offender, and therefore no reasonable suspicion existed to recommend a violation of probation based a sex offender conditions.

**349.**    On or about September, 2016 Frank Palocey, (herein Palocey) and Gail P. Hard were later appointed to prosecute plaintiff in the interest of the State of Connecticut and/ or City of Hartford

**350.**    On or about September 2016, plaintiff appeared before Judge, Julia Dewey (herein Dewy) Dewey stated she did not receive copies of plaintiffs motions or affidavits. Plaintiff had copies and submitted them in open court. Upon belief, plaintiff these pleadings were confiscated by the post-conviction law clerk as she was preset in court and looked shocked plaintiff had copies. Dewey said she would consider the motions at the probationary hearing.

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

**351.**    On or about October 2016 plaintiff appeared for violating probation. Plaintiff objected to the submission of evidence. Palocey requested an adjournment because nobody offered plaintiff a plea. Palocye offered plaintiff five years because he concluded, "his is your third violation of probation" Plaintiff explained the legal basis of his claim. Gail P. Hard, stated, "There does not need to be screening of cases because it is a factual issue not a legal issue."

**352.**    Plaintiff requested stand by counsel as he could not communicate with Palocey prior to the hearing as prison staff refused to allow him to places calls, and because he was not getting access to courts on his claims. Dewey ordered standby counsel and the post-conviction law clerk conspired with state defendant by unreasonable delaying the appointment of stand by counsel to fatigue plaintiff into giving up on his jurisdictional claim.

**353.**    The post-conviction law clerk misrepresented to plaintiff appointed stand by Counsel Stephen F. Cashman (herein Cashman) that he would be representing the plaintiff as opposed to acting as stand by counsel. Cashman took control over the case.

**354.**    When Cashman discovered he was appointed as stand by counsel there was no difference in his efforts in the case Plaintiff asked Cashman to send him evidence to support his claims in his motions but Cashman never sent the requested evidence. Plaintiff asked Cashman to help him challenge the constitutionality of the kidnapping statue and his response was, "no judge is going to have the courage to rule on it." "Your representing your self-access to courts- has "nothing to do with me."

**355.**    Plaintiff filed the present civil action in the Hartford Superior Courts' Civil Division. Plainff filed a requested a waiver of fees and cost to serve state defendants by state Marshall. On

Robles v. U.S Attorney, et al                                                    **Revised Class Action Complaint**

November, 14, 2016. Judge, Robaina J, granted the waiver but limited the defendants severed by granting a waiver for $ 75.00.00.

356.    Plaintiff discovered the $ 75.00.00 waiver would not cover service of process for one defendant. Plaintiff re-filed the present action in New Britain Superior Court. Because the waiver indicated, Robaina J would not waive additional fees if requested. Robaina J committed an act to further frustrating plaintiff access to courts on the claims herein. It should be noted the two courthouses are connected to allow state defendants to travel to each courthouse.

357.    On December 1, 2016, plaintiff moved for dismissal and filed an affidavit in support thereto in the criminal court asserting challenges to the constitutionality of the kidnapping statute and the probationary statute as applied to his conduct and classification of "high risk sex offender."

358.    On January 26, 2017, plaintiff field a motion to vacate asserting that Miano lacked competent subject matter jurisdiction to imposed the sentence given *Salamon*. On February 7, 2017, plaintiff received a letter from the post-conviction law clerk indicating both motions were set for hearing on March 1, 2017.

359.    On March 1, 2017, plaintiff appeared for the hearing on his pro se motions he attempted to submit evidence to support his claims. Plaintiff could not make copies of the evidence to submit to support his claims due to indecency.

360.    Plaintiff requested Palocey stipulate to the evidence in the court file. Palocey refused to stipulate to evidence. Dewey refused to make copies. Plaintiff proceeded and asserted Miano did not have jurisdiction to accept the plea in 2007 because it was based on incorrectly misinterpreting the law in light of *Salamon*.

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

**361.**    Palocey made no arguments in opposition. In open court plaintiff provided Dewey a waiver of fees and cost and a motion for production of transcripts to support his claims after the hearing. Dewey said she would decide in writing. She did not.

**362.**    On March 6, 2017, Dewey decided denying the waiver of fees and cost for transcripts and claimed there was only one motion before the court stating in parts, "The Defendant/ Petitioner has filed a motion to correct an illegal sentence." "The fact that the defendant/ petitioner is indigent does not automatically entitle him to a waiver of fees, especially for actions in other jurisdictions.

**363.**    On March 9, 2017, Plaintiff was called to court. Dewey mischaracterized the hearing on March 1, 2017 and the motions plaintiff filed in an attempt to avoid addressing the merits of his claims. Dewey attempted to appoint an attorney to "pre-try" the motions to further avoid addressing the merits. Plaintiff asserted that the March 1, 20017hearing was not for a waiver of fees and cost for transcripts but a hearing on the merits of his claims. Plaintiff rejected Deweys' inquiry to appoint counsel, and made additional argument.

**364.**    Dewey threatened plaintiff with the probation hearing to get plaintiff to comply with her offer of appointment of counsel. Plaintiff ignored the threat and requested that Dewey decided in writing. Dewey stated she would issue a ruling but she did not.

**365.**    On March 10, 2017 plaintiff wrote Dewey a letter regarding her decision claiming there was only one motion before the court. Plaintiff recited the factual and legal basis of his claims. The post-conviction law clerk, wrote a letter back stating "In order to avoid the appearance of impropriety or inappropriate ex parte communication, your letter is to judge of the superior court is being returned to you."

**Robles v. U.S Attorney, et al**                              **Revised Class Action Complaint**

**366.**     The post-conviction law clerk stated, "Motions, pleadings, and other filing should be submitted directly to the clerks in accordance with the rules of the court." If you are conserved about an issue or ruling in your case, you may be able to filed an appropriate motion or appeal in accordance with the practice book rules."

**367.**     On March 29, 2017, plaintiffs filed another affidavit of indecency and a request for transcripts and attached as an exhibit the letter to Dewey. The Post-conviction law clerk received the pleadings and removed the letter attached as an exhibit and sent to back to plaintiff.

**368.**     Upon information and belief, the post-conviction law clerk conspired with State defendants to discharge plaintiff off the docket cited in his motions to remove his standing on his claim before the court because a decision was due on the motions and because they did not want to address it.

**369.**     On April 10, 2017, Plaintiff wrote a letter to the persecutors office outlining the case, his claims, and the violation of his rights. The office did not respond to the letter.

**370.**     On or about April 19, 2017, Plaintiff thought he was appearing before Dewey for his requested transcripts. Palocey asked plaintiff if he could state something on the record. Plaintiff stated in the affirmative. Palocey stated, "On October 17, 2017, Plaintiff was sentenced to two counts of kidnapping in the first degree. The sentence is illegal in that the plaintiff cannot get probation for a capital A felony.

**371.**     Palocey: "He could get five years' probation for the attempted kidnapping count because it is a class B felony but the most time on probation he could get is five years. "I therefore ask the court to vacate the sentence and remand it back for sentencing. In addition, this is coming

**Robles v. U.S Attorney, et al**                                                              **Revised Class Action Complaint**

from the Attorney General's Office and That Chief States Attorney's Office."Dewey replied, "Why didn't anyone figure this out? Palocey stated," apparently nobody caught it out. Dewey sue sponte vacated the sentence from October 17, 2007.

372.    On May 4, 2017, plaintiff was brought before Judge Sheila M. Prats (herein Prats) Palocey offered a plea of 9 years', execution suspended, after Ten (10) months, One (1) year of probation. Cashman stated, Palcoey would move forward on violating probation and advocate for th full term of imprisonment left if plaintiff did not take the offer.

373.    Plaintiff contended, "How can he offer me time on a violation of probation if the original sentence was illegal and just vacated." Cashman responded, "I don't know. Plaintiff stated he would accept the offer provided it was taken as a nolo contendere plea.

374.     Prats did not accept plaintiffs' nolo contendere plea. Prats stated, "I've never seen a nolo plea accepted in a violation of probation. "Some judges have done it but I don't think it's allowed." Plaintiff withdrew his nolo plea and pleading straight guilty because if plaintiff rejected the offer they would retaliate against him by subjecting him to a longer prison sentence for arguing jurisdiction. Pratis canvassed plaintiff and erroneously concluded she had competent personal jurisdiction over him and competent subject matter jurisdiction to re-sentence him under the kidnapping docket.

375.    Prats resentenced the plaintiff by reconfiguring the sentences and discharged him off one docket. Pratis declined to impose special condition of probation.  Plaintiff was released from custody and placed on probation for one year illegally and then subjected to the same terms of probation illegally imposed because everything was rubber stamped again with the discharged docket.

**Robles v. U.S Attorney, et al**                                              **Revised Class Action Complaint**

1
2
3
4
5
6
7
8
9
10
11

### XIII. CONSPIRACY TO OBSTRUCT OF REVIEW OF PLAINTIFF CLAIM ON APPEAL

**376.**    On September 7, 2016 prior to the foregoing, while in prison, plaintiff appeared before the appellate court (herein Dipentima) and made oral argument. Plaintiff asserted his innocence and that the appellate court had the authority to modify his convictions, that the aligning *Salamon* factors caused jurisdictional defects that needed to be corrected as he has suffered prejudice in dimensions as described herein.

**377.**    On October 25, 2016, Dipentima, affirmed the judgment of Alexander, ruling that "a motion to correct an illegal sentence is not the proper procedural path for the defendant in this case to contest the validity of his guilty pleas following the change to "our kidnapping laws."

12
13
14
15
16

**378.**    Dipentima, corruptly mischaracterized plaintiffs subject matter jurisdictional claim to deny reviewing the merits. On November 23, 2016, Plaintiff filed a petition for certification of review by the Connecticut Supreme Court, and on January 1, 2017 Connecticut Supreme Court denied review.

17
18
19
20
21

**379.**    Plaintiff asserted before the Appellate Court and the Connecticut Supreme Court -- federal common law is felid -- and preempts the state procedural rules, that plaintiff has been denied access to Court on the merits of jurisdictional claims and that the state procedural path discriminates against federal jurisdictional claims in violation of the supremacy clause.

22
23
24
25
26

**380.**    Plaintiff asserted Maino lacked subject matter jurisdiction to accept his plea and impose sentences because it is based an erroneous conclusion of fact and law given *Salamon*. Plaintiff asserted he was tired in the wrong court; his case was an exclusive low court matter because the behavior considered and the judgment issued by Miano constituted a misdemeanor unlawful restraint

27
28

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

matter, which was not subject to his jurisdiction.  The Appellate Court and the Supreme Court denied

reviewing the merits of a jurisdictional claim for no rational or compelling state interest.

**381.**    I the plaintiff, Rolando, Robles duly sworn say and depose the following:

1.   I am over the age of (18) eighteen and understand the oblations of an oath;

2.   I am the plaintiff in the above caption case;

3.   I have read the foregoing, statements in this revised class action complaint and they are true
     and correct to the best of my ability and knowledge under penalty of perjury and false
     statement.

RESPECTFULLY SUBMITTED
THE PLAINTIFF- APPELLANT
By:    /s/Rolando Robles____
ROLANDO ROBLES
28 Lawrence Street 3rd fl.
Hartford Connecticut 06106
Phone: (860) 960-4442
rolandoroblesprose@gmail.com

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

91

**FIRST COUNT** (State Defendants - 42 U.S.C. § 1983 /the Fourth, Fifth and Fourteenth Amendments to the United States Constitution; Article First §§ 7, 8, and 9 of the Connecticut Constitution)

1. The allegations in paragraphs 1 through 386 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381 of the First Count.

382. The State Defendants violated the plaintiff and the classes rights secured and protected by the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article First §§ 7, 8, and 9 of the Connecticut Constitution, in one or more of these ways :

   a) in stopping, detaining, searching, and seizing the plaintiffs and the class without reasonable suspicion, probable cause, a warrant, and/or any exigent circumstances for the recommendation of the arrest for kidnapping and violations of probation;

   b) in that one or more of the state defendants deprived the plaintiff of the right to remain silent and refuse to answer questions;

   c) in using unreasonable, unjustified, and excessive physical coercion upon the plaintiff and the class;

   d) in that state defendants acted jointly and in concert with each other as they each had the duty and opportunity to protect the plaintiff and from the unlawful acts of the other;

   e) in that one or more of the state defendants associated with two or more persons for an unlawful objective based on an agreement or mutual understanding regarding an objective and to further the conspiracy;

383. As a direct and proximate result of the conduct of Defendants: Clark, Camp, Miano, Zajaja, Meredith, Lorenzen, Cashman Gold, Alexander, Taylor, Zajaja, Gail P. Hardy, Palocey,

**Robles v. U.S Attorney, et al**                                      **Revised Class Action Complaint**

Lawrence, Guysler, Coffey, Narcwitiz, Doolittle, Mark F. Kohler, and Doe Defendants as described above the plaintiff  and the class has suffered personal injuries including but not limited to injury to their reformation, rehabilitation, as well as an exacerbation to mental disability; loss of enjoyment of life; pain and suffering; lost income,  emotional distress, and shock to his entire system, some of which injuries are permanent in nature.

**SECOND COUNT** **(Defendants - Common Law)**

1.   The allegations in paragraphs 1 through 381 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381of the Second Count.

382.  One or more of the state and federal defendants violated the plaintiffs' and the classes' common law rights, in one or more of these ways:

   a) in that one or more of the state and federal defendants were reckless in reviewing documents, researching case law, and pleadings in that they should have known of a substantial and unjustifiable risk that their conduct would violate the plaintiff and the classes rights;

   b) in that one or more of the state and federal defendants intentionally disregarded reviewing documents, researching class law, and pleadings in a manner where they consciously disregarded a substantial and unjustifiable risk that their actions would violate the plaintiff and the  classes rights;

   c)  in that one or more of the state defendants falsely and/ or  recklessly detained the plaintiff and the class because they unlawfully restrained the plaintiff and the classes physical liberty without their lawful consent;

Robles v. U.S Attorney, et al                                            **Revised Class Action Complaint**

d) in that one or more of the state defendants: (1) lacked competent personal jurisdiction over the plaintiff and the class to try their cases due to lack of probable cause (2) lacked competent subject matter jurisdiction to accept pleas to kidnapping and violations of probation and lacked jurisdiction to impose sentences for kidnapping and violations of probation in that state Defendants did not have the authority of court to hear the case or the specific subject matter jurisdiction to place the case before them because state Defendants placement of the case and their conclusions of law are incorrect and erroneous given constitutional rights, statutory provisions, and the *Salamon,* decision;

e) in that one or more of the state and federal defendants recklessly inflicted emotional distress upon the  plaintiff and the class in that they should have realized that their conduct involved an unreasonable risk of causing emotional distress and that distress, might cause illness or bodily harm, further the fear or distress experienced by the plaintiff and the class were reasonable given the conduct; and/or

f) in that one or more of the state defendants intentionally inflicted emotional distress upon the plaintiff and the class in that they: (1) intended to inflict emotional distress upon the plaintiff and the class or that they knew or should have known that emotional distress was the likely result of their conduct; (2) that their conduct was extreme and outrageous; (3) that their conduct caused the distress; and (4) that the emotional distress sustained by the plaintiff and the class was severe;

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

g) in that one or more of the state defendants had an ulterior purpose or motive underlying the use of the criminal and probationary process, and some acts in using these legal processes were not proper in the regular prosecution of these proceedings;

h) in that one or more of the state defendants: (1) concealed or suppressed material facts; (2) knew of theses material facts (4) suppressed or concealed facts with the intention that the plaintiff and the class be misled on the true condition of these facts (5) that the plaintiff and the class were reasonably so misled; and (6) that the plaintiff and the class suffered damage as a result;

i) in that one or more of the state defendants: (1) had an attorney-client relationship with the plaintiff and the class, which triggers a duty on their attorney to exercise reasonable professional care, skill, and knowledge in providing legal services to the plaintiff and the class (2) the state defendants breached that duty , in that they: (3) failed to file pleadings to exonerate the plaintiff and the class of  the kidnapping offense as a matter of law, either through appeal, direct attack or post-conviction proceedings, or through an affirmative judicial finding of factual innocence and (4) state defendants are the proximate causal link between by the violation of the duty of care and the plaintiff and the classes conviction or enhanced sentence;

j) in that one or more of the state defendants offices: (1) receive state and federal funding (2) state defendants have existing attorney-client relationship with the plaintiff and the class  (3) had a duty to research and discover when the kidnapping statue was redefined, ... a duty to research and discover who was incarcerated under the redefined statute and a duty to

determine the effect on all sentences affected by the change in law, ... (4) failed to file pleadings with the trial court advocating the plaintiff and/ or the classes dispositions was no longer authorized by law;

k) in that one or more of the state defendants: (1) signed an adhesion contract with the plaintiff (2) the plaintiff fulfilled performance, (3) Defendant's unjustly enriched themselves (4) and breach the terms of adhesion contract;

l) in that one or more of the state defendants implementation of the conditions of court and their individual and collective offices had a natural tendency to create danger. State Defendants conduct interfered with a right commonly known to the public. State defendants inflicted injury upon the plaintiff and the class. State defendants created a danger through rubber-stamping, which was and is a continuing one. State Defendants use and implementation of the conditions of the court and their individual offices were unreasonable or unlawful; and state defendants' caused and created a nuisance resulting in rubber stamping decisions and documents which is vital and material to court advocacy;

m) in that one or more of the stat defendants committed systematic acts and/or continued unwanted and annoying actions, including threats, demands, and applied illegal pressure to the plaintiff and the class to imply a retaliatory motivation on part of the state's attorney and the sentencing judge, merely to gain sadistic pleasure from making the plaintiff and the class fearful or anxious;

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

n)  in that the state and federal defendants acted jointly and in concert with each other as they each had the duty and opportunity to protect the plaintiff and the class from the unlawful acts of the other.

o)  in that one or more of the state and federal defendants associated with two or more persons for an unlawful objective based on an agreement or understanding regarding the objective and the manner in which it was to be achieved for the commission of an unlawful overt act to further the conspiracy

382.  As a direct and proximate result of the conduct of state Defendants: Clark, Camp, Miano, Zajaja, Meredith, Lorenzen, Cashman, Gold, Alexander, J. Robina, Taylor, C.J Dipentima, Jane Doe Post-Conviction, David Zajaja,, Gail P. Hardy, Palocey, Susan Storey, Brain Carlow, Guysler, Coffey, Narcwitiz, Doolittle, Patrick Carol, Mark F. Kohler,  Ndidi N. Moses, and Doe Defendants as described above the plaintiff and the Class have suffered personal injuries including but not limited to injury to the classes reformation, rehabilitation as well as an exacerbation to their disability; loss of enjoyment of life; pain and suffering; lost income, emotional distress, and shock to their entire system, some of which injuries are permanent in nature.

**THIRD COUNT** (State Defendants - 42 U.S.C. § 1983 / 42 U.S.C. § 12101/ Article first § 10, the First, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution; Article First §§ 4, 5, 7, 8, 9, 10, 12, 13, 14, and 20 of the Connecticut Constitution)

1.  The allegations in paragraphs 1 through 381 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381 of the Third Count.

382.  The state defendants violated the plaintiff and the classes rights secured and protected by, the First, Fifth, Eighth and Fourteenth Amendments to the United States Constitution, Article First §§ 4, 5, 7, 8, 9, 10, 12, 13, 14, and 20 of the Connecticut Constitution, in one or more of these:

Robles v. U.S Attorney, et al                              Revised Class Action Complaint

a) In that one or more of the state defendants: (1) wrongfully arrested the plaintiff and the class by mistaking their disability for criminal conduct, and (2) did not properly investigate or considered their mental disability as a mitigating factor in their dispositions (3) failed to reasonably accommodate the plaintiff and the class disabilities in the course of investigations, arrests, proceedings, imprisonments, placements, and release to the community;

b) in that one or more of the state defendants: (1) performance was deficient (2) the deficient performance prejudiced the plaintiff and the class (3) state defendants' errors were the sole reason the plaintiff and the class waived their right to trial, plead guilty and were not accommodated ;

c) in that one or more of the state defendants were deliberately indifferent to the vocal opposition of the plaintiff detention and the class beyond the term permissible by law resulting in the continued incarceration of the plaintiff and the class after the lawful basis for custody expired;

d) in that one or more of the state and federal defendants systemically frustrated or impeded the plaintiff and the class access legitimate access to courts by refusing to: (1) prepare and file legal pleadings based on the claims herein; (2) raise and compose written decisions on the merits of cognizable claims, asserted herein;

e) in that one or more of the state and federal defendants: (1) deprived the plaintiff and the class of a statutory liberty interests and (2) notice and opportunity to be heard at a meaningful time and in a meaning full manner concerning the issues herein;

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

f) in that one or more of the state defendants punished acts of the plaintiff and the class that were not punishable when they were committed and/ or imposed additional punishment on the plaintiff and the class for acts already committed through re-arrest and re-sentencing;

g) in that one or more of the state defendants deprived the plaintiff and the class of the nature of the charge against them to deprive them of sufficient precision to enable them to prepare their defense and to avoid prejudicial surprise, and . . . to enable them to plead their acquittal or conviction in bar of any future prosecution for the same offense;

h) in that one or more of the state and federal defendants retaliated against the plaintiff and the class because of their vocal opposition to their illegal activities. State and federal defendants took adverse actions against the plaintiff and the class by denying review and consideration which chilled their rights and advanced no compelling state or federal interest;

i) in that one or more of the state defendants uttered the plaintiff is a "high risk sex offender" this utterance injured the plaintiff reputation, it is capable of being proven false, and the plaintiff claims it is false, that because of this utterance by state defendants a material state-imposed burden or state-imposed alteration was applied to the plaintiff, changing his status or rights before the court and the community;

j) in that one or more of the Defendants with no compelling state interest treated Black and Hispanics males differently than the white males who were similarly situated for the purpose of the recommendation of the charge, arrest , prosecution, and conviction of kidnapping;

k) in that the state and federal defendants acted jointly and in concert with each other as they each had the duty and opportunity to protect the class from the unlawful acts of the other;

**Robles v. U.S Attorney, et al**                                                    **Revised Class Action Complaint**

l)  in that one or more of the state and federal defendants associated with two or more persons for an unlawful objective based on an agreement or mutual understanding regarding the objective and the manner in which it was to be achieved for the commission of an unlawful, overt act to further the conspiracy.

383.  As a direct and proximate result of the conduct of State Defendants: Clark, Camp, Miano, Zajaja, Meredith, Lorenzen, Cashman, Gold, Alexander, J. Robina, Taylor, C.J Dipentima, Jane Doe Post-Conviction, Zajaja, Gail P. Hardy,Palocey, Oliver J, Guysler, Coffey, Narcwitiz, Doolittle, Patrick Carol, Mark F. Kohler, Ndidi N. Moses, and Doe Defendants as described above the plaintiff and the Class have suffered personal injuries including but not limited to injury to the classes reformation, rehabilitation as well as an exacerbation to disability; loss of enjoyment of life; pain and suffering; lost income, emotional distress, and shock to their entire system, some of which injuries are permanent in nature.

**FOURTH COUNT** (State and federal Defendants - 18 U.S.C §1964/ 29 U.S.C. § 794/ 42 U.S.C. § 12101/ the Fifth, Eighth, and Fourteenth Amendments to the United States Constitution; Articles First §§ 2, 5, 7, 8, 9, 10, 12, 13, 14, 19, and 20 of the Connecticut Constitution)

1.  The allegations in paragraphs 1 through 381 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381 of the Fourth Count.

382.  The state and federal Defendants violated the classes rights secured and protected by, the Fifth, Eighth, and Fourteenth Amendments to the United States Articles First §§ 2, 5, 7, 8, 9, 10, 12, 13, 14, 19, 20, and Article Fifth § 1 of the Connecticut Constitution, in one or more of these ways:

a)  in that one or more of the state defendants have committed predicate acts that contribute to the acquisition or control of an enterprise: Defendants: (1) have received federal and state

Robles v. U.S Attorney, et al                                    **Revised Class Action Complaint**

aid for years (2)  have notice of the plaintiff and the classes mental disabilities; (3) refused to accommodate the plaintiff and the classes' mental disability by not placing them in: (a) juvenile court proceedings, (b) probation, (c) parole, (d) promise to appears, (e) alternative incarceration programs, and/ or (f) mental health facility, in discrimination to the plaintiff and the classes developmental disabilities, in that with or without reasonable modifications to rules, policies, or practices ... plaintiff and the class could not meet the essential eligibility requirements for receiving services or participation in programs or activities provided by state defendants causing loss of employment, education, or employment opportunities and dependence on the Federal SSI program;

b)  in that one or more of the state defendants receive state and federal aid but subjected the plaintiff and the class to ill will, deliberate indifference, and discrimination by and through state defendants disparate treatment, disparate impact, and failure to provide reasonable accommodations to the plaintiff and the classes mental impairments within their services, programs, and activities as shown herein;

c)  in that one or more of the state defendants (1) exercised of powers and duties which belong exclusively to another branch, or (2) conferred powers and duties of one branch of government on another branch which significantly interfered  with the orderly performance of the latter branches essential functions as shown herein;

d)  in that the state and federal defendants acted jointly and in concert with each other as they each had the duty and opportunity to protect the class from the unlawful acts of the other;

**Robles v. U.S Attorney, et al**                    **Revised Class Action Complaint**

e) in that one or more of the state and federal defendants associated with two or more persons for an unlawful objective based on an agreement or mutual understanding regarding the objective and the manner in which it was to be achieved for the commission of an unlawful, overt act to further the conspiracy;

384.    As a direct and proximate result of the conduct of State Defendants: Clark, Camp Miano, Zajaja, Meredith, Lorenzen, Cashman Gold, Alexander, J. Robina, Taylor, C.J Dipentima, Jane Doe Post-Conviction, Kevin T. Kane,, Zajaja, Gail P. Hardy, Palocey, Guysler, Coffey, Narcwitiz, Doolittle, Mark F. Kohler , Patrick Carol, Dannel P. Malloy, Michael Lawlor, Ndidi N. Moses, and Doe Defendants as described above the plaintiff and the Class have suffered personal injuries including but not limited to injury to their reformation, rehabilitation, as well as an exacerbation to mental disability; loss of enjoyment of life; pain and suffering; lost income, emotional distress, and shock to their entire system, some of which injuries are permanent in nature.

## FIFTH COUNT (City of Hartford, State Defendants- 42 U.S.C. § 1983 /42 U.S.C. § 12101/ Fourth and Fourteenth Amendments to the United States Constitution; Article First §§ 7, 8, and 9 of the Connecticut Constitution)

1.    The allegations in paragraphs 1 through 381 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381 of the Fifth count

382.    The City of Hartford and the State of Connecticut was acting by and through state defendants who are the final policy makers in law enforcement, and had in effect actual and/or de facto policies, practices, and customs.

383.    These actual and/or de facto policies, practices, and customs include, but are not limited to::

Robles v. U.S Attorney, et al                                    Revised Class Action Complaint

a) Falling properly screen, discipline, transfer, counsel, and/or otherwise control defendants engaged in the law of search and seizure, the separation of powers, deliberate indifference; the law of using unreasonable, unjustified, and excessive force; and the duty to intervene to protect and secure individual civil rights; and/or

b) Failing to properly train and supervise state defendant in the law of search and seizure, deliberate indifference; the separation of powers; the law of using unreasonable, unjustified, and excessive force; and the duty to intervene to protect and secure individual civil rights;

c) Failing research and discover when the kidnapping statue was invalidated as applied to the class, ... a duty to research and discover who was incarcerated under the invalid statute, and a duty to determine the effect on all sentences affected by the change in law, ... [and] to file pleadings with the trial court advocating the classes' dispositions was no longer authorized by law;

d) State defendants knew of and were deliberately indifferent to the plaintiff mental state and need for mental health treatment by disregarding that risk by failing to take reasonable measures to abate an unreasonable risk of suicide;

e) in that one or more of the state defendants an associated with two or more persons for an unlawful objective based on an agreement or mutual understanding regarding the objective and the manner in which it was to be achieved for the commission of an unlawful, overt act to further the conspiracy.

**384.**    These actual and/or de facto policies, practices, and customs constitute deliberate indifference to the rights of the citizens and residents of the City of Hartford and the State of Connecticut were a moving force behind the State Defendants constitutional violations.

Robles v. U.S Attorney, et al                                 **Revised Class Action Complaint**

385.    As a direct and proximate result of the conduct of Defendants: Clark, Camp Miano, Zajaja, Meredith, Lorenzen, Cashman Gold, Alexander, J. Robina, Taylor, C.J Dipentima, Jane Doe Post-Conviction, Zajaja, Gail P. Hardy, Palocey, Oliver J, Lawrence, Dannel P. Malloy, Michael Lawlor, Mark F. Kohler Guysler, Coffey, Narcwitiz, Doolittle, Patrick Carol, Ndidi N. Moses, and Doe Defendants the Class have suffered personal injuries including but not limited to injury to the classes reformation, rehabilitation, as well as and scarring, an exacerbation to disability; loss of enjoyment of life; pain and suffering; lost income, emotional distress, and shock to their entire system, some of which injuries are permanent in nature.

## SIXTH COUNT (City of Harford - Conn. Gen. Stat. § 52-557n; Conn. Gen. Stat. § 7- 465)

1.    The allegations in paragraphs 1 through 381 of the Preliminary Statement are reincorporated and realleged as if restated herein as paragraphs 1 through 381 of the Sixth Count.

382.    The City of Harford is liable to the Plaintiff and the class under one or more of these statues:

   a)  Conn. Gen. Stat. § 52-557n in that a municipal employee(s) negligence caused damage to the Plaintiff, who was an identifiable victim subjected to immanent harm; and/or

   b)  Conn Gen. Stat. § 7-465 in that the municipality must indemnify municipal employee(s) who cause physical injury and/or violate an individual's civil rights

383.    As a direct and proximate result of the conduct of Defendants: Clark, Camp Miano, Zajaja, Meredith, Lorenzen, Cashman Gold, Alexander, J. Robina, Taylor, C.J Dipentima, Jane Doe Post-Conviction, Zajaja, Gail P. Hardy, Palocey, Oliver J, Lawrence, Dannel P. Malloy, Michael Lawlor, Mark F. Kohler Guysler, Coffey, Narcwitiz, Doolittle, Patrick Carol, Ndidi N. Moses, and Doe Defendants as described above the plaintiff and the Class have suffered personal injuries including

Robles v. U.S Attorney, et al                                      Revised Class Action Complaint

but not limited to injury to their reformation, rehabilitation, as well as an exacerbation to disability; loss of enjoyment of life; pain and suffering; lost income, emotional distress, and shock to their entire system, some of which injuries are permanent in nature.

## **DEMAND FOR RELIEF**

**WHEREFORE,** the plaintiff and the class claims this relief :

1.     Issue a declaratory judgment about the constitutionality of C.G.S. §§ 53a-91;53a-92(a)(2)(A) and C.P.B. § 43-22 based on the foregoing under the supremacy clause as no adequate remedy at law or declaratory judgment is not available;

2.   Issue an injunction and/ or restraining order, **ORDERING**:

   a.   Defendants are to place pictures of the bill of rights, the A.D.A and Connecticut Constitutional rights in all lock up and public areas of the court for plain viewing and access to all;

   b.   Defendants are to place a picture of the franks Doctrine, a notary public and standard affidavit forms in all the lock up and public court areas for legitimate access to courts;

   c.   Defendants are to expunge the plaintiffs criminal record and disciplinary ticket history;

   d.   Defendants are to conduct an internal investigation and provide such findings to the plaintiff;

   e.   Defendants are to submit to a federal investigation by the department of justice;

   f.   Defendants are to move for review of employee conduct and termination of employment and any and all benefits;

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

105

3.  Award individual damages: Nominal, Compensatory, and punitive damages to the plaintiff and to the class in the relevant capacities;

4.  Such other relief as the court deems equitable and just.

## STATEMENT RE: AMOUNT IN DEMAND

The amount, legal interest, and property in demand are a presumed amount of monies or more, exclusive of interest and cost.

RESPECTFULLY SUBMITTED
THE PLAINTIFF- APPELLANT
By: ___/s/Rolando Robles
ROLANDO ROBLES
28 Lawrence Street 3rd fl.
Hartford Connecticut 06106
Phone: (860) 960-4442
rolandoroblesprose@gmail.com

**Robles v. U.S Attorney, et al**                                    **Revised Class Action Complaint**

106